*In re* FRED TALLY, a Person Subject to Involuntary Commitment (The People of the State of Illinois, Petitioner-Appellee, v. Fred Tally, Respondent-Appellant).

Fourth District   No. 4—90—0727

Opinion filed June 26, 1991.

386

James W. Ackerman, of Springfield, for appellant.

Donald M. Cadagin, State's Attorney, of Springfield (Kenneth R. Boyle, Robert J. Biderman, and Dale M. Wood, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

On October 10, 1990, respondent Fred Tally was found to be a person subject to involuntary admission (Ill. Rev. Stat. 1989, ch. 91½, par. 3—700) following a jury trial in Sangamon County. Defendant was ordered to remain hospitalized at Memorial Medical Center (Memorial). A notice of appeal was filed on October 18, 1990, pursuant to section 3—816 of the Mental Health and Developmental Disabilities Code (Code) (Ill. Rev. Stat. 1989, ch. 91½, par. 3—816). We affirm.

On appeal, the respondent argues that the trial court abused its discretion in denying the respondent's motion to continue, and exceeded its authority by granting a motion to amend Dr. Shea's certificate; and erred in entering the judgment herein in that (1) the petition had only one certificate and, because of that, the complaint must be dismissed, and (2) the State produced insufficient evidence to find the respondent subject to involuntary commitment.

Eugene Stormer, a social worker for the SIU School of Medicine and director of Community Support Network (an organization which provides support services for mental patients living in the community), was called by the emergency room at Memorial on September 26, 1990, to come and help the respondent, who had been brought to the emergency room by a friend. Stormer testified respondent appeared disheveled and wore dirty clothes. He spoke with respondent for approximately 20 minutes. Stormer further testified he had observed respondent the previous day attempting to hail a bus by standing in the middle of the street. Stormer asked respondent if this was a safe thing to do and respondent replied that it did not matter. Finally, after leaving the emergency room, Stormer went to lock up respondent's apartment. Stormer testified the apartment was bug-infested, contained rotting food in the kitchen, and there were dirty dishes strewn about the kitchen as well. Furthermore, Stormer stated there were clothes thrown about

the apartment and several pairs of shoes lined up in the middle of the room "as if to make some kind of wall down the center of the room." Stormer indicated a few weeks earlier, respondent had left a pot on his stove which caught on fire and, but for Stormer's intervention with respondent's landlord, respondent would have been evicted. Finally, Stormer offered a lay opinion that respondent was likely to hurt himself either through eating contaminated food or careless cooking. On cross-examination, Stormer stated he knew respondent was employed by McDonald's and also attended Lincoln Land Community College.

Dr. Laura Shea testified she was a board-eligible psychiatrist and a licensed physician and was respondent's treating physician at Memorial. Dr. Shea testified respondent suffered from chronic paranoid schizophrenia. She stated respondent was delusional and believed he was the owner of all McDonald's restaurants. She further testified respondent believed he was a doctor and a lawyer and that he often laughed for no apparent reason. When asked if she had an opinion, within a reasonable degree of medical certainty, whether because of his mental illness respondent was unable to provide for his basic physical needs or to guard himself from harm from the outside world if released, she replied:

> "I'm really concerned that he would not be able to do that at this point. I think that he's not aware that he's having a problem right now. That's a problem in itself because he doesn't think that he needs to see the doctor for anything. He doesn't think he needs medication."

On cross-examination, Dr. Shea testified she probably had only spent a total of one hour with respondent.

Lisa Kowalski, a third-year medical student under the guidance of Dr. Shea, testified she had also observed respondent while he was at Memorial. She testified respondent was agitated and displayed violent propensities. She further stated respondent made several delusional statements to her, including a statement that he was shot through his soul, which was his appendix. Respondent also told Kowalski he was a lawyer, a doctor, and that he owned 103 McDonald's restaurants. Respondent stated he earned all of Jesus Christ's money and that Jesus Christ was a very rich man. According to respondent, a scar on his abdomen was a stab wound inflicted by his mother when she marked him one of Christ's disciples. Respondent became agitated while watching television and told Kowalski he could no longer watch the baseball game on television because they kept changing the instant replays. Finally, Ko-

walski stated she believed respondent was unable to take care of himself without taking his medication.

The State called respondent as an adverse witness. Respondent testified he had suffered a gunshot wound six years earlier. Respondent stated he was different colors in the past, including white, and that he was Ronald McDonald. He further stated, although he had not actually claimed them yet, he owned all McDonald's restaurants. He planned to claim the restaurants as his own by working at them and showing others how he liked his food prepared. Respondent also testified he was a breakfast cook at McDonald's and goes to Lincoln Land Community College on a city bus. He denied stepping in front of the bus to stop it but rather contended he merely waved at it to cause it to stop.

Arthur Borders, a friend of respondent's, testified on his behalf. Borders stated respondent was capable of dressing and feeding himself. Borders stated he would go by respondent's house and watch television with respondent. He also testified he often had to repeat himself and it appeared as though respondent was not listening when Borders spoke to him.

Respondent made a motion for directed verdict at the close of the State's case in chief. That motion was denied and not renewed at the close of his case. The jury returned a unanimous verdict that respondent was subject to involuntary commitment. The trial court informed respondent of his right to appeal and respondent immediately indicated he wished to exercise that right.

The first argument raised by respondent is the trial court abused its discretion in denying respondent's motion for a continuance on the first day of trial. When the petition was filed, a hearing date was set for October 5, 1990, and Bob Hall was appointed to represent respondent. On October 5, 1990, respondent requested a different attorney and the court appointed James Ackerman. The court granted a continuance until October 9, 1990. On that day, respondent expressed a desire for yet another attorney; however, after inquiry from the trial court, respondent agreed to continue with Ackerman as his attorney.

Thereafter, Ackerman moved for a continuance, alleging that the previous day respondent had indicated he did not wish to be represented by Ackerman and, because of that, Ackerman did not have sufficient time to discuss the case with the respondent. Ackerman also based his motion to continue on the fact respondent appeared to be uncertain as to whether he wished to retain Ackerman as counsel.

The trial court denied the motion for a continuance but indicated it would allow counsel time to speak with the respondent before the trial began. Ackerman then thanked the court and asked for five minutes to consult with respondent. The court granted that request and further indicated it would allow both parties the opportunity to speak with Dr. Shea.

■■ ■ Granting a continuance based upon defense counsel's lack of preparation rests within the trial court's discretion. On review, the trial court's decision will only be reversed where an abuse of discretion is shown. (*People v. Thomas* (1988), 176 Ill. App. 3d 514, 531 N.E.2d 84.) Where a continuance is requested to permit preparation of the case, all surrounding facts and circumstances must be evaluated. If the trial transcript indicates that the trial counsel competently represented the defendant by filing pretrial motions to suppress, cross-examining prosecution witnesses, interposing objections throughout the trial, and offering a closing argument, there is no abuse of discretion in denying a continuance. (*People v. Finklea* (1989), 187 Ill. App. 3d 610, 543 N.E.2d 536.) It is well settled that a continuance for purposes of allowing counsel to prepare is not erroneously denied unless defendant is prejudiced by the denial. *People v. Sayles* (1985), 130 Ill. App. 3d 882, 474 N.E.2d 870.

■■ The trial transcript indicates defense counsel competently represented respondent. Counsel effectively cross-examined the State's medical expert, objected to testimony during the trial, and gave a closing argument. The transcript indicates counsel impeached the medical expert (by making her admit she only spent a total of one hour with respondent), moved for a directed verdict at the close of the State's case, and also presented a witness on behalf of respondent. Moreover, the court itself indicated counsel had previously represented other defendants in mental health proceedings and on numerous occasions had been successful. Finally, counsel was appointed on October 5, 1990, and the trial was continued until October 9, 1990. Presumably, counsel had those four days in which to prepare. Respondent incurred no prejudice as the result of a denial of a continuance. No abuse of discretion occurred.

■■ For his second argument, respondent contends the trial court exceeded its authority by granting a motion to amend Dr. Shea's certificate. Initially, we note defendant has waived this issue. Supreme Court Rule 341(e)(7) provides arguments of appellants must contain their contentions and reasons therefor, including citations of authority, and that points not argued are waived. (134 Ill. 2d R. 341(e)(7).) Mere contentions, without argument or citations of

authority, do not merit consideration on appeal. (*Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 453 N.E.2d 1133.) The contentions supported by some argument but by absolutely no authority do not meet the requirements of Supreme Court Rule 341(e)(7). (*In re Marriage of Drummond* (1987), 156 Ill. App. 3d 672, 509 N.E.2d 707.) Defendant's two paragraphs, which contain no citation to authority and minimal argument, do not meet these requirements; therefore, defendant has waived this issue.

Moreover, respondent's argument is without merit. The petition for the involuntary commitment of respondent and the two certificates were filed on September 27, 1990. The petition alleged respondent was unable to care for himself. The first certificate was executed on September 26, 1990, and stated the doctor examined defendant on September 26, 1990, at Memorial Medical Center emergency room. Respondent was found to be delusional, fearful, paranoid, and unable to take care of himself. The second certificate was executed on September 27, 1990, by Dr. Shea. She stated respondent was well-known to have chronic paranoid schizophrenia, was not taking his medication, and was abusing marijuana. Respondent was found to be delusional and in need of treatment. On the first certificate, the examiner checked the box which stated in his opinion "[respondent is] [a] person who is mentally ill and who because of his/her illness is unable to provide for his/her basic physical needs so as to guard himself/herself from serious harm." On the second certificate, Dr. Shea checked the box which indicated in her opinion "[respondent is] [a] person who is mentally ill and because of his/her illness is reasonably expected to inflict serious physical harm upon himself/herself or another in the near future." Prior to the commencement of the trial, but after the jury was sworn, the trial court, over respondent's objection, granted the State's motion to amend the certificate of Dr. Shea. Her certificate was amended so that the box alleging respondent was unable to provide for his basic physical needs was checked.

The State indicated it would proceed on the grounds that respondent was unable to provide for his basic physical needs and the jury had also been told this would be the grounds for the involuntary commitment. Dr. Shea testified at trial that it was her belief respondent was unable to provide for his basic physical needs and she did not object to the amendment of her certificate. Clearly, the amendment of Dr. Shea's certificate was correct.

■ Respondent next argues the trial court's order of commitment should be reversed because there was noncompliance with the

statutory provisions requiring two certificates of physicians agreeing on the same diagnosis and prognosis of respondent. However, since we have determined the amendment of Dr. Shea's certificate was correct, there were in fact two certificates on file with the same diagnosis and prognosis of respondent. Therefore, there was compliance with the relevant statutes.

Respondent's final argument is that there was insufficient evidence for the jury to find he was subject to involuntary commitment because he was unable to provide for his basic physical needs.

Section 1—119 of the Code states in part:

" 'Person subject to involuntary admission' or 'subject to involuntary admission' means:

(1) A person who is mentally ill and who because of his illness is reasonably expected to inflict serious physical harm upon himself or another in the near future; or

(2) A person who is mentally ill and who because of his illness is unable to provide for his basic physical needs so as to guard himself from serious harm." Ill. Rev. Stat. 1989, ch. 91½, par. 1—119.

Dr. Shea testified, as respondent's treating physician, respondent suffered from chronic paranoid schizophrenia. Her determination was based on respondent's medical history and her own examination and observations of respondent. There was clear and convincing evidence to establish respondent suffered from a mental disorder.

■ Respondent contends the evidence was insufficient to establish he could not provide for his basic needs. We disagree. Dr. Shea testified she was concerned that respondent would be unable to provide for his basic physical needs. She stated respondent was unaware he was having a problem and that his continual refusal to take his medication could lead him to harm himself. Lisa Kowalski testified to specific instances of respondent's delusions and agitated behavior. Moreover, Eugene Stormer testified respondent's apartment contained bug-infested and rotten food and generally was disheveled. Stormer also testified respondent left his job when he was supposed to be working and left his stove unattended, causing a pot to catch on fire. Respondent was observed standing in front of a bus in an attempt to hail the bus. Most importantly, the jury heard respondent testify he used to be white, was Ronald McDonald, and was merely waiting to claim ownership to all McDonald's restaurants. Throughout the trial, respondent orally agreed with the wit-

nesses who testified that he had stated earlier that he owned all McDonald's restaurants and was Ronald McDonald.

There was clear and convincing evidence that respondent was unable to care for his basic physical needs. The verdict of the jury was not against the manifest weight of the evidence, and the trial court properly entered the order finding respondent was subject to involuntary admission. The trial court is affirmed.

Affirmed.

SPITZ and GREEN, JJ., concur.