SECOND DIVISION

October 15, 2002 

No. 1-00-3163

In re MARRIAGE OF RIVKA KOHL,

Petitioner-Appellant,

and

MENAHEM KOHL,

Respondent-Appellee. 

)))

)

)))

))

Appeal from the Circuit Court of Cook County

97 D 90409

Honorable

Gay Lloyd Lott, Judge Presiding

PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

Petitioner Rivka Kohl, a resident of Israel, filed a combined petition for support under the Uniform Interstate Family Support Act (750 ILCS 22/100 through 999 (West 1998) (the Uniform Act); and for rule to show cause against her former husband, respondent Menahem Kohl,
(footnote: 1) a resident of Skokie, Illinois.  In her combined petition, Rivka alleged that for more than 18 years Menahem wilfully refused to comply with an Israeli court's order to pay child support for their four children.  Menahem moved for dismissal, citing section 607(a)(1) of the Uniform Act (750 ILCS 22/607(a)(1) (West 1998)), which indicates that registration and enforcement of a foreign support order may be opposed on the basis of the foreign court's lack of personal jurisdiction.  After reviewing the evidence of service that the Israeli court relied upon in entering a default judgment against Menahem, the circuit court found that Menahem had not been served and dismissed the rule to show cause proceedings.  The court subsequently denied Rivka's motion for reconsideration.  

Rivka appeals those orders, arguing that it was improper for the circuit court to consider Menahem's arguments, because the support order was confirmed by operation of law when he failed to contest its registration and enforcement in Illinois within 20 days of being served with the Illinois petition, as required by section 606 of the Uniform Act.  750 ILCS 22/606 (West 1998).  She also argues that the record established that Menahem was personally served in the Israeli proceedings on December 23, 1981, and that he generally appeared four years later by sending a letter to the Netanyah, Israel, "Execution Bureau" objecting to the sale of the family apartment in partial satisfaction of the accumulating support arrearage.  Her third contention is that personal jurisdiction was or could have been litigated in the Israeli proceedings, and, therefore, 
res judicata 
prevents Menahem from raising the issue now.  Finally, Rivka argues that comity required the circuit court to respect the Israeli court's finding of personal jurisdiction and to enforce its order.

   The record shows the following.  Rivka and Menahem were married in Israel and had four children together between October 7, 1972 and August 5, 1981.  On October 23, 1981, Rivka filed a petition in a Tel Aviv, Israel, district court seeking child support and "alimony" from her husband.  She alleged that Menahem had abandoned the family and was in hiding; and she submitted confirmation from the border police that Menahem left Israel on August 30, 1981, and had not returned.  She sought permission to serve Menahem in Equador, indicating that she had discovered his address from two letters he had sent to one of the children.  The Israeli district court, Judge Berman, authorized the foreign service of process, to "be executed by registered mail with a confirmation of delivery and also by means of the Israeli Representative in the State of Ecuador," at the following address:  "M. Kol, Pedro Carbo 809 Y Ballen, Gayaquil, Ecuador."  Judge Berman did not explain the implications of the phrase "and also by means of the Israeli Representative in the State of Ecuador," and there is no further mention of this phrase in any other Israeli court document in the record filed in this appeal.

Judge Berman received confirmation that a person signing "M" to a postal receipt had accepted registered mail addressed to M. Kol at an address on "Pedro Carlo [sic]" in Gayaquil, Ecuador. Menahem does not dispute that he was residing in "Guayaquil [sic]," Ecuador, in 1981, and admits that his business address was "Pedro Carbo 809, Guayaquil, Equador," but he denies that he was served on December 23, 1981, and he contends that the date stamped on the postal receipt is not even decipherable.  Further, Rivka and Menahem disagree over whether the handwritten address appearing on the receipt shows a street address of "Pedro Carlo 809 Y Ballen" or "Pedro Carlo 8094 Ballen."

On February 25, 1982, Judge Berman entered a decision against Menahem, stating in pertinent part:

"The respondent is summoned to appear in court and was duly served outside the jurisdiction by venue of foreign postal service on December 23, 1981.  Owing to the fact that the signature of the recipient is hard to decipher, nevertheless, since the time span has not exceeded that allowed by law, the court must accept it and since there was no counter claim submitted and the defendant never showed up, there lies no alternative other than to give a final decision in this matter, albeit in the absence of the defense and without appearance."

Judge Berman compelled Menahem "to pay alimony and child support *** in the amount of 9,000 New Israeli Shekel[s] a month, beginning January 16, 1982, and every month thereafter on the 16th of the month," and determined that payments would be adjusted every three months according to a cost-of-living index.  Additionally, Judge Berman ordered Menahem to pay for dental care for two of the children in "the amount of 25,000 NIS, which sum shall be linked to the cost of living index."

Menahem has never complied with the support order.  Rivka states that, as a result, she received welfare payments from the Israeli National Insurance Institute until 1984, when she began working outside the home.

Rivka and Menahem participated in marriage dissolution proceedings before the rabbinical court of Tel Aviv.  This court is distinct and separate from the civil district court that heard Rivka's support petition, and according to Rivka, it is the only Israeli court with authority to grant a divorce.  The marriage was dissolved by a final order of the rabbinical court on July 21, 1985.

On September 17, 1986, the "Execution Bureau" in Netanya, Israel, sent Menahem a "Warning," indicating that a certified copy of the district court's support order was attached and that unless Menahem objected within 21 days of receipt or paid Rivka 48,185 New Israeli Shekels, he would face "execution measures according to law."

In a letter dated December 24, 1986, addressed to the "Netanya Court President" and titled "Appeal," Menahem stated that he had not received the warning until December 18, 1986.  He stated that the judgment had not been "handed" to him and that "[t]he [real] property [to be executed upon, the Kohl family apartment was] not in the jurisdiction of Netanya but in Rishon Le Zion."  Menahem asked the "Netanya Court President" to "instruct the Netanya Execution Office to nullify every process against [him] until [he was] able to prove [his] claims if and when *** [he was] requested to do so."

In a letter to Menahem dated January 1, 1987, "The Magistrate's Court, Netanya," forwarded "a copy of the court's Registrar's decision" about Menahem's "petition to cancel the proceedings."  The letter stated, "Please notice that according to the decision of the Chairman of the Execution Bureau 'the arguments raised by the petitioner - cannot withhold the execution of the judgment.'"

Subsequently, the family apartment at 19/9 Karl Neter Street, Rishon-Le-Zion, was sold during 1987 for an unspecified amount, and the National Insurance Institute recouped its welfare payments from Menahem's half of the proceeds before the remainder was paid to Rivka.

On March 18, 1997, with the assistance of the office of the State's Attorney of Cook County, Rivka filed a "Uniform Support Petition" in the circuit court of Cook County, which was personally served on Menahem in Skokie on March 25, 1997.  The accompanying summons stated that Menahem was required to file an appearance and answer "on or before 5/28/97 for a hearing on the complaint."  It further provided, "If you fail to do so, a judgment by default may be taken against you for the relief asked in the complaint."

On April 30, 1997, Menahem filed an appearance, and on July 3, 1997, Menahem filed a motion to dismiss Rivka's petition on the basis of the Israeli court's lack of personal jurisdiction.  Menahem's motion was supported in part by an affidavit stating that he "exited Equador on December 20, 1981 for Miami[, Florida]," and "was not served with summons through certified mail on December 23, 1981."

Rivka subsequently retained private counsel, and by agreement of the parties, Rivka and Menahem filed new pleadings, which are the subject of this appeal.

On March 11, 1999, Rivka filed the combined petition for support under the Uniform Act and for a rule to show cause mentioned above.  She alleged in part that Menahem had been "validly served with process on December 23, 1981, as found by the Israeli court," but had "wilfully and contumaciously refused or failed to comply" with the Israeli support order.  Accordingly, she sought imposition of a fine or "imprisonment" if the circuit court determined that Menahem was in contempt of court.

On April 9, 1999, Menahem filed a motion to dismiss, arguing in pertinent part that the combined petition should be dismissed pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 1998)) and section 607 of the Uniform Act (750 ILCS 22/607 (West 1998)) because the only evidence of service in the Israeli proceeding was a signature on a postal receipt which was "not decipherable" as Menahem's.  In a supporting affidavit, Menahem stated that he had departed from Equador for Miami, Florida, on December 20, 1981, was not served in Equador on December 23, 1981, and that the postal receipt did not contain his "signature."  Menahem further argued that Rivka had not complied with the procedures to register a foreign support order as specified in section 602 of the Uniform Act (750 ILCS 22/602 (West 1998)) prior to seeking its enforcement through a rule to show cause proceeding.  In response, Rivka argued that the Israeli judgment had been properly registered through the petition she filed on March 19, 1997, with the assistance of the State's Attorney's office, but she also attached a proposed petition for registration of a foreign judgment pursuant to the Uniform Act.

When Menahem's motion to dismiss was heard on August 6, 1999, Rivka was given leave to file her proposed petition for registration of the foreign judgment, and she did so at the conclusion of the hearing.

In an order dated February 4, 2000, the circuit court determined that it would not simultaneously rule on Rivka's request for support pursuant to the Uniform Act and Rivka's request for a rule to show cause, because the issue of support and the issue of indirect civil contempt were sufficiently different to warrant separate treatment.  The circuit also determined the following:

"In the ordinary case, the [Illinois] court must accept the [foreign] court's declaration of jurisdiction, but the transcript available in this matter sheds important light on the matter.

There was no personal service of notice to [Menahem] in Equador.  The court could not ascertain from the return postal receipt whether [Menahem] signed for the letter bearing notice of the proceedings or not. [Menahem] did not submit to the jurisdiction of the court by filing an appearance.

* * *

The court finds, therefore, that the matter of jurisdiction is dispositive of [the petition for rule to show cause].

***

*** [T]he Petition for Rule to Show Cause is dismissed accordingly."

On August 23, 2000, Rivka's motion for reconsideration of the dismissal was denied, and the circuit court indicated that there was no just reason to delay enforcement or appeal of the order.  On September 15, 2000, Rivka filed this timely appeal.

Before reaching Rivka's contentions on appeal, we will first consider a motion that was taken with the case.  Menahem is moving to strike attachments to Rivka's reply brief, specifically, evidentiary material that was never filed in the circuit court and that is not part of the record on appeal.  These attachments are photocopies of a street map of Guayaquil, Equador, and a document entitled "Selected International Conventions:  Convention of the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters."  Rivka offers these materials to support her contentions that (1) Pedro Carbo and Ballen are intersecting streets, and, therefore, a person delivering mail to "Pedro Carbo 809 Y Ballen" would recognize that "Y Ballen" was superfluous information, and that (2) Israel considers registered mail delivery to be an acceptable form of service.  Rivka contends that we may take judicial notice of this material.

However, the contents of the attachments are not commonly and generally known facts that are well established within our jurisdiction, and therefore, they are not subject to judicial notice in this jurisdiction.  
Cook County Department of Environmental Control v. Tomar Industries
, 29 Ill. App. 3d 751, 754, 331 N.E.2d 196 (1975) (a court may take judicial notice of facts that are a matter of common and general knowledge and that are well established and known within the jurisdiction of the court).

Furthermore, we cannot consider the map, the "convention," or any other material outside the certified record.  
Harris v. Old Kent Bank
, 315 Ill. App. 3d 894, 898, 735 N.E.2d 758 (2000) (striking interrogatory answers attached to brief as not properly before the reviewing court); 
Jones v. Police Board
, 297 Ill. App. 3d 922, 930, 697 N.E.2d 876 (1998) (striking supplemental appendix which presented transcript of proceedings).

   Finally, Rivka's attempt to introduce new arguments in her reply brief is a violation of Supreme Court Rule 341(g), which provides that an appellant's reply brief "shall be confined strictly to replying to arguments presented in the brief of the appellee."  177 Ill. 2d R. 341(g).

For these reasons, the map and "convention" attached to Rivka's brief are not properly before this court and are therefore stricken.

Pursuant to the Uniform Act, a support order issued in another state is registered when the order is filed in Illinois, and it shall be recognized and enforced in Illinois if the issuing tribunal had jurisdiction.  750 ILCS 22/603(a), (c) (West 1998).  The term "state" includes a foreign jurisdiction that has enacted a law or established procedures for issuance and enforcement of support orders which are substantially similar to the procedures specified in the Uniform Act, the Uniform Reciprocal Enforcement of Support Act or the Revised Uniform Reciprocal Enforcement of Support Act (750 ILCS 20/1 
et
 
seq
 (West 1998)).  750 ILCS 22/101 (West 1998).

Citing section 606 of the Uniform Act (750 ILCS 22/606 (West 1998)), Rivka argues that Menahem was barred from contesting the validity or enforcement of the Israeli order in Illinois when he failed to request a hearing within 20 days of being personally served with the Illinois petition she filed in 1997 with the assistance of the State's Attorney's office.  Section 606 provides:

"(a) A nonregistering party seeking to contest the validity or enforcement of a registered order in this State shall request a hearing within 20 days after the date of mailing or personal service of notice of the registration.  The nonregistering party may seek to vacate the registration, to assert any defense to an allegation of noncompliance with the registered order, or to contest the remedies being sought or the amount of any alleged arrearages pursuant to Section 607.

(b) If the nonregistering party fails to contest the validity or enforcement of the registered order in a timely manner, the order is confirmed by operation of law."  750 ILCS 22/606 (West 1998).

Menahem responds that Rivka failed to notify him of the 20-day time limit, as required by section 605 of the Uniform Act (750 ILCS 22/605 (West 1998)), and therefore section 606 does not apply.  We agree.  Section 605 states:

"(a) When a support order *** issued in another state is registered, the registering tribunal shall notify the nonregistering party.  The notice must be accompanied by a copy of the registered order and the documents and relevant information accompanying the order.

(b) The notice must inform the nonregistering party:

(1) that a registered order is enforceable as of the date of registration in the same manner as an order issued by a tribunal of this State;

(2) that a hearing to contest the validity or enforcement of the registered order must be requested within 20 days after the date of mailing or personal service of the notice;

(3) that failure to contest the validity or enforcement of the registered order in a timely manner will result in confirmation of the order and enforcement of the order and the alleged arrearages and precludes further contest of that order with respect to any matter that could have been asserted;  and

(4) of the amount of any alleged arrearages."  750 ILCS 22/605 (West 1998).

The record includes Rivka's 1997 petition and the accompanying summons, which were served on Menahem on March 25, 1997.  There is no section 605 language in either of these documents, and the record does not disclose a separate section 605 notice.  The summons in the record indicates that Menahem was required to file an appearance and answer by May 28, 1997, approximately two months after he was served.  He appeared on April 30, 1997, and filed a motion to dismiss on July 3, 1997, without any apparent objection from Rivka.  The summons did not state that the Israeli order is enforceable in Illinois in the same manner as an order issued by an Illinois court; it did not state that Menahem must request a hearing within 20 days and that his failure to do so would bar him from ever doing so, and it did not state a specific amount of arrearages.  Furthermore, the petition generally sought "collection of arrears," rather than a specific amount of arrears.  Based on the language of section 605 and this record, we conclude that none of the documents served on Menahem in 1997 met the requirements of section 605.  Thus, we find that section 606 was never triggered.  Therefore, the record does not support Rivka's contention that Menahem was barred from contesting the registration and enforcement of the Israeli order in Illinois due to his failure to request a hearing within 20 days of service in 1997.  See 
State of Washington v. Thompson
, 339 Ark. 417, 6 S.W.3d 82 (1999) (indicating that service of documents which did not clearly notify defendant of the need to request a hearing within 20 days did not bar defendant from subsequently presenting any defense allowed under section 607).

In his motion to dismiss, Menahem asserted section 607(a)(1) of the Uniform Act (750 ILCS 22/607(a)(1) (West 1998)) and section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (1998)).

Section 607 of the Uniform Act provides that the nonregistering party may contest the validity or enforcement of a registered order or seek to vacate the registration of the order by proving one or more enumerated defenses, including the defense that the issuing tribunal lacked personal jurisdiction over the contesting party.  750 ILCS 22/607(a)(1) (West 1998).

"A section 2-619 motion to dismiss provides a means for disposing of issues of law or easily proved issues of fact at the outset of the case."  
Lang v. Silva
, 306 Ill. App. 3d 960, 969, 715 N.E.2d 708 (1999).  When ruling on a section 2-619 motion, the court may consider pleadings, affidavits and deposition transcripts.  
Lang
, 306 Ill. App. 3d at 969.  If evidentiary facts asserted in an affidavit filed in support of a motion to dismiss are not refuted by a counteraffidavit, the court will take those facts as true (
Lang
, 306 Ill. App. 3d at 969-70), notwithstanding contrary unsupported allegations in the plaintiff's pleadings (
Pryweller v. Cohen
, 282 Ill. App. 3d 899, 907, 668 N.E.2d 1144 (1996)).  When reviewing a dismissal pursuant to section 2-619, we conduct a 
de novo
 review and  determine whether a genuine issue of material fact exists and whether the defendant is entitled to a judgment as a matter of law.  
Lang
, 306 Ill. App. 3d at 970.

Rivka argues that the record established that Menahem was personally served by certified mail delivery in Equador on December 23, 1981.  Although Rivka and Menahem have spent considerable effort questioning whether the handwritten address on the postal receipt shows delivery was made at "Pedro Carlo 809 Y Ballen" or "Pedro Carlo 8094 Ballen," we do not consider it necessary to decipher the address, because regardless of where delivery occurred, Menahem's uncontroverted affidavits show that he was not properly served.

The only evidence of service is the postal receipt signed with the initial "M."  Rivka argues that Menahem is not denying that he sometimes signs with this single initial; however, nothing in the record establishes that in 1982 Menahem was using this single initial as his signature.  Furthermore, in the affidavit dated July 3, 1997, Menahem affirmatively stated that he "was not served with summons through certified mail on December 23, 1981."  In his additional affidavit, dated April 7, 1999, Menahem affirmatively stated that he "was not served with summons through certified mail or through any other service of process on December 23, 1981."  Menahem also stated in both affidavits that he left Equador for Miami on December 20, 1981, three days before the purported service in Equador on December 23, 1981, and he provided passport pages supporting this claim.

Rivka's unsupported allegation that Menahem was "validly served with process on December 23, 1981," was negated by his subsequent affidavits.  
Pryweller
, 282 Ill. App. 3d at 907; 
Lang
, 306 Ill. App. 3d at 969-70.  She did not file a counteraffidavit refuting his factual assertions; therefore, his factual assertions are taken as true.  
Pryweller
, 282 Ill. App. 3d at 907; 
Lang
, 306 Ill. App. 3d at 969-70.  Thus, the postal receipt establishing that "M" received certified mail in Equador on December 23, 1981, does not establish that Menahem received certified mail in Equador on December 23, 1981.  We therefore find that Rivka failed to create a genuine issue of material fact over whether Menahem was personally served in the Israeli proceedings.

Rivka also argues that Menahem generally appeared before the Israeli district court by sending a letter to the "Netanya Court President" in response to the "Execution Bureau's" warning of imminent execution of the support order.  She cites numerous Illinois decisions indicating that a party waives any objection to personal jurisdiction by filing a general appearance or by acknowledging that a case is properly in court by arguing the merits of the case rather the limited issue of personal jurisdiction or by subsequently accepting the benefits of the court's judgment.  See, 
e.g.
, 
Community Bank & Trust Co. of Edgewater v. Pavlich
, 84 Ill. App. 3d 1080, 406 N.E.2d 164 (1980).

We reject Rivka's conclusion, because the record does not support it.  Menahem addressed his letter to the "Court President," and the record shows that the letter was reviewed and rejected by "the court Registrar" and the "Chairman of the Execution Bureau."  In contrast, the original support proceedings were adjudicated in the Tel Aviv district court before "Judge Berman."  There is no evidence that the court president, the court registrar or the execution bureau chairman is a judge, rather than, as each title suggests, a government administrator.  There is also no evidence that the execution bureau is an Israeli court, rather than, as its title suggests, a collection arm of the Israeli government.

As Menahem points out, Rivka's argument about the effect of his letter is also unpersuasive because she has not cited any case law indicating that interacting with a government administrator or agency is a submission to the jurisdiction of a court.  Many of the cases that Rivka relies upon are distinguishable because they refer to active participation in courtroom proceedings, which did not occur here.  See, 
e.g.
, 
In re Marriage of Buchanio
, 262 Ill. App. 3d 910, 635 N.E.2d 980 (1994) (where mother initiated proceedings to modify visitation arrangements, father's motion to dismiss asserting that foreign court had made determinations of visitation and support was consent to court's personal jurisdiction); 
Weierman v. Wood Landscaping, Inc.
, 259 Ill. App. 3d 300, 630 N.E.2d 1298 (1994) (motion to vacate default judgments and requesting leave to file an answer or otherwise plead was submission to court's personal jurisdiction); 
In re Estate of Zoglauer
, 229 Ill. App. 3d 394, 397, 593 N.E.2d 93 (1992) ("limited special appearance challenging jurisdiction" coupled with active participation in proceedings amounted to general appearance); 
In re Marriage of Lenhardt
, 176 Ill. App. 3d 429, 531 N.E.2d 123 (1988) ("special and limited appearance" challenging merits of domestic violence proceeding was general appearance); 
Rock Island Bank & Trust Co. v. Stauduhar
, 59 Ill. App. 3d 892, 902, 375 N.E.2d 1383 (1978) (judgment was rendered without personal jurisdiction but voluntarily appearing in court in judgment release proceedings gave court jurisdiction over person).

Other cases that Rivka relies upon are distinguishable because they involve persons who actively benefitted from a judge's decision, and there is no indication in the record that Menahem ever attempted to do the same.  For example, in 
In re Marriage of Paulius
, 131 Ill. App. 3d 343, 475 N.E.2d 1006 (1985), a former husband, who had remarried and enforced child visitation rights recited in a divorce decree, could not move to vacate and expunge the divorce decree.  Similarly, in 
Lord v. Hubert
, 12 Ill. 2d 83, 86, 145 N.E.2d 77 (1957), although a contingent remainderman was not served and did not appear in farmland partition proceedings, he acknowledged and attempted to benefit from the partition by initiating separate proceedings to obtain the sale proceeds, and he was therefore prevented from disputing the validity of the partition.

Therefore, we reject Rivka's unsupported claim that Menahem's postjudgment correspondence to the "Court President" constituted a general appearance before the Israel courts, and we agree with the circuit court's conclusions in this regard.  Rivka did not create a genuine issue of material fact over whether Menahem generally appeared before the Israeli court.

Rivka cites 
Morey Fish Co. v. Rymer Foods, Inc.
, 158 Ill. 2d 179, 632 N.E.2d 1020 (1994), and 
Baldwin v. Iowa State Traveling Men's Ass'n
, 283 U.S. 522, 75 L. Ed. 1244, 51 S. Ct. 516 (1931), and argues that the principle of 
res judicata
 prevents Menahem from "relitigating" the issue of personal jurisdiction. Menahem responds that the issue of personal jurisdiction was never "litigated," and we agree.

The doctrine of 
res judicata
 is based on the principle that a cause of action, "once adjudicated by a court of competent jurisdiction, should be deemed conclusively settled between the parties and their privies, except in a direct proceeding to review or set aside such adjudication."  
Drabik v. Lawn Manor Savings & Loan Ass'n
, 65 Ill. App. 3d 272, 276, 382 N.E.2d 333 (1978).  "The basis of the doctrine of 
res judicata
 is that the party against whom the doctrine is raised has litigated or had an opportunity to litigate the same matter in a former action."  
Drabik
, 65 Ill. App. 3d at 277.  "A former judgment is deemed conclusive not only as to all matters litigated and determined, but all matters which might have been presented to support or defeat a claim."  
Drabik
, 65 Ill. App. 3d 277.  The doctrine of 
res judicata 
prevents repetitive litigation in an effort to obtain judicial economy and to protect litigants from the burden of retrying an identical cause of action with the same party or privy.  
Pedigo v. Johnson
, 130 Ill. App. 3d 392, 394, 474 N.E.2d 430 (1985).  
"Res judicata
 is premised on the notion that the law affords every man his day in court along with the opportunity to present his case on the issues involved."  
Pedigo
, 130 Ill. App. 3d at 395.  

However, it is essential that a defendant actually be afforded the opportunity to appear, present his case, and be heard.  
Morey Fish
, 158 Ill. 2d at 187.  If a court proceeds to judgment without personal jurisdiction, the defendant need not abide by that court's determination on the issue.  
Morey Fish
, 158 Ill. 2d at 187-89, quoting 
Baldwin
, 283 U.S. at 524-26, 75 L. Ed. at 1247 51 S. Ct. at 517-18.  "A court which does not have jurisdiction over a party may not create that jurisdiction by judicial fiat" (
Morey Fish
, 158 Ill. 2d at 189), and a judgment rendered without personal jurisdiction is void regardless of whether the defendant had actual knowledge of the proceedings (
State Bank of Lake Zurich v. Thill
, 113 Ill. 2d 294, 308, 497 N.E.2d 1156 (1986).  Accordingly, "a judgment rendered by a court which fails to acquire jurisdiction over either the parties or the subject matter of the litigation may be attacked and vacated at any time or in any court, either directly or collaterally."  
Morey Fish
, 158 Ill. 2d at 186-87, citing 
Thill
, 113 Ill. 2d at 309.

Here, the  Israeli court did not hear arguments from both parties on the issue of personal jurisdiction.  Although the Israeli court made a determination of personal jurisdiction, it did so on the basis of Rivka's arguments alone, and the record does not establish that Menahem was properly served and therefore given the opportunity to appear, present his arguments, and be heard on this issue.  Menahem never litigated or had an opportunity to litigate the issue of personal jurisdiction before the Israeli court; therefore, the doctrine of 
res judicata
 is inapplicable to that court's 
ex parte 
determination of personal jurisdiction.  
Drabik
, 65 Ill. App. 3d at 276; 
Morey Fish
, 158 Ill. 2d at 187-89.  

Rivka also argues that the Israeli default order is entitled to recognition in Illinois, due to the doctrine of comity.

Comity has been defined as the "recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to the international duty and convenience and to the rights of its own citizens who are under the protection of its laws." 
Clubb v. Clubb
, 402 Ill. 390, 399-400, 84 N.E.2d 366 (1949), citing 
Hilton v. Guyot
, 159 U.S. 113, 164, 40 L. Ed. 95, 108, 16 S. Ct. 139, 143 (1895)).  Under the doctrine of comity, Illinois courts may choose to recognize support orders issued by foreign courts, although recognition may be withheld where the foreign court lacked jurisdiction over the cause and the parties.  
Hager v. Hager
, 1 Ill. App. 3d 1047, 1051, 274 N.E.2d 157 (1971) (
in personam
 judgment of Greek court that did not have personal jurisdiction will not be enforced in Illinois); 
Ransom v. A.B. Dick Co.
, 289 Ill. App. 3d 663, 669, 682 N.E.2d 314 (1997) (comity is to be accorded to an act of a foreign court as long as that court is of competent jurisdiction and the laws and public policy of the forum state are not violated).  A decision by the circuit court to grant or deny comity will not be reversed absent an abuse of discretion.  
Ransom
, 289 Ill.  App. 3d at 699-700.

Because the circuit court correctly found that the Israeli court lacked personal jurisdiction over Menahem, the circuit court's decision to withhold comity was not an abuse of its discretion.  
Ransom
, 289 Ill. App. 3d at 699-700. 

Based on the preceding analysis, we conclude that there was no genuine issue of material fact as to whether the Israeli court obtained personal jurisdiction over Menahem, whether he subsequently generally appeared, or whether the doctrine of 
res judicata
 or comity warranted enforcement of the Israeli court's 
ex parte 
judgment.  As there was no genuine issue of material fact, Menahem was entitled to judgment as a matter of law, and the circuit court properly granted Menahem's section 2-619(a)(9) motion to dismiss Rivka's petition for rule for show cause.  
Lang
, 306 Ill. App. 3d at 970; 735 ILCS 5/2-619(a)(9) (West 1998).

Rivka is also appealing the denial of her motion to reconsider the dismissal.  Rivka has waived this issue.  Supreme Court Rule 341(e)(7) provides that the appellant must provide argument and citation to authority and that points not argued are waived.  134 Ill. 2d R. 341(e)(7).  Mere contentions, without argument or citations of authority, do not merit consideration on appeal.  
In re Tally
, 215 Ill. App. 3d 385, 390-91, 574 N.E.2d 1262 (1991).  Rivka refers to the court's reconsideration ruling in her appellate briefs but has not presented any argument about this particular ruling and has not cited any authority on the subject of reconsideration rulings.  Rivka has not met the requirements of Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)), and has waived this issue (
Tally
, 215 Ill. App. 3d at 390-91).

Furthermore, based on our analysis determining that the motion to dismiss was properly granted, we further conclude that the circuit court did not abuse its discretion in denying Rivka's motion to reconsider the dismissal. 
Kaiser v. MEPC American Properties, Inc.
, 164 Ill. App. 3d 978, 987, 518 N.E.2d 424 (1987) (purpose of a motion to reconsider is to bring to the court's attention changes in the law, errors in the court's previous application of existing law, or newly discovered evidence which was not available at the time of the hearing the motion); 
American National Trust Co. v. Kentucky Fried Chicken of Southern California, Inc.
, 308 Ill. App. 3d 106, 120, 719 N.E.2d 201 (1999) (decision to grant or deny a motion for reconsideration is within the discretion of the court, and will not be reversed absent an abuse of that discretion).

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

GORDON and BURKE, JJ., concur.

FOOTNOTES
1:  The spelling of respondent's first and last names is inconsistent in the record.  His first name is spelled "Menahem" or "Menachem;" and his last name is spelled "Kohl" or "Kol."