# Illinois Official Reports

## Appellate Court

---

### *In re Parentage of A.H.*, 2017 IL App (1st) 133703

---

| | |
|---|---|
| Appellate Court Caption | *In re* PARENTAGE OF A.H., *et al.*, Minors (Wipaporn T. a/k/a Chirathip T., Individually and as Parent and Next Friend on Behalf of Minors A.H. a/k/a H.H., A.H. a/k/a H.H., and A.H. a/k/a W.H., Petitioners-Appellees, v. Harlow H., Respondent-Appellant). |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-3703 |
| Rule 23 order filed | December 2, 2016 |
| Rule 23 order withdrawn | January 11, 2017 |
| Opinion filed | January 20, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-D-6475; the Hon. Jeanne Cleveland Bernstein, Judge, presiding. |
| Judgment | Affirmed and remanded. |
| Counsel on Appeal | Beerman Pritikin Mirabelli Swerdlove LLP, of Chicago (Enrico J. Mirabelli, Howard A. London, and Matthew D. Elster, of counsel), for appellant.<br><br>Paul L. Feinstein, Ltd., of Chicago (Paul L. Feinstein, of counsel), for appellees. |

Panel                        JUSTICE LAMPKIN delivered the judgment of the court, with opinion.

Presiding Justice Gordon and Justice Reyes concurred in the judgment and opinion.

## OPINION

¶ 1        In this action against the biological father, the mother filed a petition to recognize and enroll a foreign judgment that established the father's paternity of triplets, who were conceived through a method of assisted reproduction, and imposed support obligations. We conclude that the circuit court properly extended comity to the foreign judgment because it was not contrary to Illinois public policy and the father failed to establish that the judgment was obtained by fraud or that he was denied a full and fair opportunity to present a defense in the foreign proceeding.

¶ 2        A court in Thailand entered a judgment that adjudicated respondent Harlow H. to be the biological father of triplets conceived by gamete intrafallopian transfer (GIFT) and imposed child support obligations on him. Thereafter, the mother, Wipaporn T. a/k/a Chirathip T., petitioned the circuit court of Cook County to, *inter alia*, recognize and enroll the Thai judgment under the principles of comity.

¶ 3        Harlow moved to dismiss the petition, arguing the Thai judgment was not entitled to comity because it was contrary to Illinois public policy as expressed in a statutory provision addressing sperm donors and artificial insemination. The circuit court denied Harlow's motion to dismiss. Thereafter, Harlow filed an answer and affirmative defenses, asserting, *inter alia*, that comity could not be extended to the Thai judgment because Wipaporn obtained it by fraud and Harlow was denied a full and fair hearing in Thailand. Pursuant to Wipaporn's motion, the circuit court struck and dismissed Harlow's answer with prejudice, enrolled the Thai judgment, and held that there was no just reason to delay enforcement or appeal of its order.

¶ 4        Harlow appealed, contending (1) the Thai judgment was not entitled to comity because it directly contradicted Illinois public policy, which prevents sperm donors in certain situations from being legally treated as the natural fathers of children conceived by artificial insemination and (2) the application of *res judicata* and dismissal of Harlow's answer was improper because Wipaporn obtained the Thai judgment by fraud, Harlow did not have the opportunity to litigate his defenses in Thailand, and his appeal of the Thai judgment rendered the extension of comity to that judgment premature.

¶ 5        For the reasons that follow, we affirm the judgment of the circuit court.

¶ 6                                         I. BACKGROUND

¶ 7        Harlow held an economics Ph.D. and went to Thailand to work as an economic analyst between 2001 and 2009. Harlow began a personal relationship with Wipaporn in 2001 that continued for several years. Harlow was a citizen of the United States and already married to an American woman. In January 2004, Wipaporn and Harlow participated in a traditional wedding ceremony ritual in Thailand, but they were not registered as being legally married.

They were not able to conceive children naturally and agreed that Wipaporn would undergo a GIFT procedure using Harlow's sperm. Harlow consented to this procedure in writing and signed the consent form on the line designated "husband." The procedure was successful, and their three sons were born on November 5, 2008.

¶ 8 Harlow financially supported Wipaporn and their three sons until September 2009. Thereafter, Wipaporn filed a civil suit against Harlow in Thailand to establish his paternity and obtain child and educational support. Harlow was represented in the matter by counsel, who filed an appearance, entered exhibits, and submitted a legal memorandum arguing that Illinois law prevented the imposition of a finding of paternity and child support obligations on him. Harlow chose not to personally appear at the trial for reasons of legal strategy.

¶ 9 According to the record, Harlow argued at the trial level in the Thai court that he and his American wife were married and living together for 19 years, the three boys were not his children, he did not have sexual intercourse with Wipaporn during her fertile period, and he never underwent fertility medical treatment to have children with Wipaporn. He also averred in his answer that Wipaporn had gone through a fertility medical treatment with another person and deceived Harlow by telling him that the three boys were Harlow's children. Wipaporn presented photographic evidence of her and Harlow's 2004 wedding ceremony and reception, documentation that Harlow consented to the GIFT procedure and allowed the doctor to take his sperm to used in such treatment, and DNA test results that established Harlow was the biological father of the three boys. Harlow submitted a testimonial statement to the Thai court, but the statement was inadmissible because he would not submit to cross-examination.

¶ 10 In December 2010, the Thai court entered an order that adjudicated Harlow to be the legal father of the triplets and awarded Wipaporn child and educational support in gradually increasing amounts. This decision was affirmed by Thailand's appellate court in June 2013. In a judgment dated both July 6, 2015, and January 18, 2016, Thailand's supreme court affirmed the judgment but amended it to require Harlow to provide educational support for his three sons only until they reached the age of majority. On February 5, 2016, the Thai court issued a certificate of case finality in this matter. This court takes judicial notice of the proceedings and final judgment of the Thai court. *La Salle National Bank v. City of Chicago*, 3 Ill. 2d 375, 379-80 (1954) (a reviewing court can take judicial notice of documents or events that make an issue on appeal moot); *Muller v. Zollar*, 267 Ill. App. 3d 339, 341 (1994) (judicial notice is proper where the document is part of the public record and where the notice will aid in the efficient disposition of a case).

¶ 11 Meanwhile, in June 2011, Wipaporn filed in the circuit court of Cook County her initial petition to, *inter alia*, enroll the Thai judgment, establish Harlow's child support obligations, recognize and enforce the Thai judgment based on comity, and increase the award of child support. Later, Wipaporn filed a four count amended petition, seeking (1) recognition and enrollment of the Thai judgment under principles of comity, (2) modification of the Thai judgment, (3) a *de novo* child support calculation, and (4) damages for breach of contract.

¶ 12 In August 2012, Harlow moved to dismiss the amended petition, arguing the Thai judgment was not entitled to comity. Specifically, Harlow argued that because he was never married to Wipaporn, the Thai judgment was contrary to Illinois public policy as expressed in a statutory provision that prevented the donor of semen used in the artificial insemination of a woman other than the donor's wife from being treated in law as if he were the natural

father of the resulting child. In March 2013, the circuit court denied Harlow's motion to dismiss the amended petition with respect only to count I, which requested the extension of comity to the Thai judgment; the circuit court did not rule on the other three counts. Thereafter, the circuit court denied Harlow's motion to reconsider.

¶ 13 In July 2013, Harlow filed an answer and affirmative defenses, asserting, *inter alia*, that comity could not be extended to the Thai judgment because Wipaporn obtained it by fraud and Harlow was denied a full and fair hearing in Thailand. In his answer, Harlow admitted he was the known sperm donor but alleged Wipaporn had concealed from him her relationship with another man, with whom she was cohabiting. Harlow alleged Wipaporn intended him to be merely a sperm donor, had used his money to support her partner, and wanted to use Harlow's wealth to secure permanent financial support for herself and her partner. According to Harlow, Wipaporn made misrepresentations to Harlow to induce him to participate in the GIFT procedures. Harlow asserted that he did not learn about the partner's involvement until after the Thai trial court issued the judgment in 2010 and thus was unable to prepare a full defense at the trial in Thailand.

¶ 14 Wipaporn moved to strike and dismiss Harlow's answer and affirmative defenses. She argued that the circuit court's denial of Harlow's motion to dismiss count I of the amended petition resolved the only legal issue between the parties and *res judicata* barred Harlow's pleading. On August 22, 2013, the circuit court struck and dismissed Harlow's answer with prejudice, granted count I of the amended petition by enrolling, based on comity, the Thai judgment as an Illinois judgment, and held that there was no just reason to delay enforcement or appeal of its order. Thereafter, the circuit court denied Harlow's motion to reconsider.

¶ 15 Harlow timely appealed, contending that (1) the Thai judgment was not entitled to comity because it directly contradicted Illinois public policy, which prevents sperm donors in certain situations from being legally treated as the natural fathers of children conceived by artificial insemination, and (2) the application of *res judicata* and dismissal of Harlow's answer was improper because Wipaporn obtained the Thai judgment by fraud, Harlow was denied an opportunity to fully litigate his defenses in Thailand, and his appeal of the Thai judgment rendered the extension of comity to that judgment premature.

¶ 16                  II. ANALYSIS

¶ 17 This court has defined the doctrine of comity as a " 'recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to the international duty and convenience and to the rights of its own citizens who are under the protection of its laws.' " *In re Marriage of Kohl*, 334 Ill. App. 3d 867, 880-81 (2002) (quoting *Clubb v. Clubb*, 402 Ill. 390, 399-400 (1949)). Under the doctrine of comity, courts may defer to the laws or interests of a foreign country and decline to exercise jurisdiction that is otherwise properly asserted. Generally, the decision to grant or deny comity by a trial court will not be reversed absent an abuse of discretion. *Id.* at 881; *In re Marriage of Pearson*, 236 Ill. App. 3d 337, 349 (1992) (an abuse of discretion occurs when no reasonable person would adopt the view taken by the trial court).

¶ 18 Recognition of a foreign judgment may be withheld where it is contrary to the public policy of the state where the recognition is sought, the country in which the decree was rendered does not recognize American decrees, or the judgment was obtained in bad faith, by fraud or by taking advantage of the foreign law. *Hager v. Hager*, 1 Ill. App. 3d 1047, 1051

(1971). Illinois courts have also considered whether the rendering court had jurisdiction over the person and the subject matter, and whether the party was given timely notice and an opportunity to present a defense. *In re Marriage of Murugesh*, 2013 IL App (3d) 110228, ¶ 41; *In re Marriage of Silvestri-Gagliardoni*, 186 Ill. App. 3d 46, 51 (1989). Courts considering whether to give comity to a foreign judgment should also consider whether the foreign court "can do complete justice to those affected by the decree." *Codo, Bonds, Zumstein & Konzelman, P.C. v. Federal Deposit Insurance Corp.*, 148 Ill. App. 3d 698, 703 (1986).

¶ 19                      A. The Thai Judgment and Illinois Public Policy

¶ 20      First, Harlow challenges the circuit court's denial of his motion to dismiss Wipaporn's amended petition and extension of comity to the Thai judgment. Harlow argues that the Thai judgment was not entitled to comity as a matter of law because it directly contradicted Illinois's alleged public policy that a man who donates semen to a physician for use in the artificial insemination of a woman who is not the donor's wife shall not be treated in law as if he were the natural father of the resulting child. Harlow contends this public policy is found in section 3(b) of the Illinois Parentage Act (Parentage Act) (750 ILCS 40/3(b) (West 2008)). We disagree.

¶ 21      A motion to dismiss "admits all well-pled allegations in the complaint and reasonable inferences to be drawn from the facts." *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 184 (1997). Harlow brought his motion to dismiss under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2012)), which permits a litigant to combine a section 2-615 (735 ILCS 5/2-615 (West 2012)) motion to dismiss and a section 2-619 (735 ILCS 5/2-619 (West 2012)) motion for involuntary dismissal into one pleading. A section 2-619 motion raises certain defects or defenses and questions whether the movant is entitled to judgment as a matter of law. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 494 (1994). A section 2-615 motion questions whether a complaint states a cause of action. *Id.* at 488. When ruling on a motion to dismiss under either section 2-615 or 2-619 of the Code, the court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. *Chicago Flood Litigation*, 176 Ill. 2d at 189. A motion to dismiss should be granted only if the non-movant can prove no set of facts that would support a cause of action. *Id.* A trial court's decision on a motion to dismiss a complaint is reviewed *de novo*, without deference to the trial court's rulings. *Id.*

¶ 22      Harlow's public policy argument against extending comity to the Thai judgment is based on his interpretation of the Parentage Act. Our review of matters of statutory interpretation is *de novo*. *People v. Robinson*, 172 Ill. 2d 452, 457 (1996). In construing a statute, this court must give effect to the intent of the legislature. *Antunes v. Sookhakitch*, 146 Ill. 2d 477, 484 (1992). To ascertain legislative intent, we must examine the language of the entire statute and consider each part or section in connection with every other part or section. *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 318 (1989). In interpreting a statute, courts should not add requirements or impose limitations that are inconsistent with the plain meaning of the enactment. *Nottage v. Jeka*, 172 Ill. 2d 386, 392 (1996). Where the language is clear and unambiguous, we must apply the statute without resort to further aids of statutory construction. *Davis v. Toshiba Machine Co., America*, 186 Ill. 2d 181, 184-85 (1999). Our examination of the three sections of the Parentage Act finds nothing to support Harlow's

- 5 -

assertion that Illinois public policy prevents the imposition of a paternity finding and child support obligations on him in the instant case.

¶ 23    The Parentage Act (750 ILCS 40/1 *et seq.* (West 2008)), which became effective in 1984 (Pub. Act 83-1026, § 1 (eff. Jan. 5, 1984)), has been repealed (Pub. Act 99-763, § 15 (eff. Jan. 1, 2017)). Its repeal is not surprising given our supreme court's critique that it "fails to address the full spectrum of legal problems facing children born as a result of artificial insemination and other modern methods of assisted reproduction." *In re Parentage of M.J.*, 203 Ill. 2d 526, 536 (2003). The court urged the Illinois legislature to enact laws responsive to the legal problems produced by the rapid evolution of assisted reproduction technology in order to safeguard the interests of children born as a result of that technology. *Id.* at 537.

¶ 24    The purpose of the Parentage Act was "to define the legal relationships of a child born to a wife and husband requesting and consenting to *** artificial insemination." Pub. Act 83-1026, (eff. Jan. 5, 1984). The Parentage Act provided that "[a]ny child *** born as the result of heterologous artificial insemination shall be considered at law in all respects the same as a naturally conceived legitimate child of the husband and wife" who requested and consented to the use of that technique. 750 ILCS 40/2 (West 2008). Furthermore, section 3 of the Parentage Act provided, in pertinent part:

> "(a) If, under the supervision of a licensed physician and with the consent of her husband, a wife is inseminated artificially with semen donated by a man not her husband, the husband shall be treated in law as if he were the natural father of a child thereby conceived. The husband's consent must be in writing executed and acknowledged by both the husband and wife. ***
>
> (b) The donor of the semen provided to a licensed physician for use in artificial insemination of a woman other than the donor's wife shall be treated in law as if he were not the natural father of a child thereby conceived." 750 ILCS 40/3 (West 2008).

¶ 25    Harlow contends that he was merely a sperm donor in the absence of a legal marriage between him and Wipaporn and thus Illinois public policy, as derived from section 3(b) of the Parentage Act, precluded the establishment of a parent-child relationship and the imposition of a support obligation on him. We do not agree. Harlow reads section 3(b) in isolation from the language of the entire statute and thus relies on a strained interpretation of the Parentage Act to support his assertion that Illinois public policy protects men in his situation from paternity claims and child support obligations. When we examine the language of the entire Parentage Act and consider each section in connection with every other section or subsection, the clear and unambiguous language establishes that the statute's purpose "is to provide a legal mechanism for a husband and wife to obtain donor sperm for use in artificial insemination and to ensure that a child is considered the legitimate child of the husband and wife requesting and consenting to the artificial technique." *In re Parentage of M.J.*, 203 Ill. 2d at 534. In this context, there would be no basis under section 3(b) for a sperm donor who is not married to the woman who is artificially inseminated with his sperm to either make a claim of paternity or be subject to claims of paternity and liability for child support. *Id.*

¶ 26    The unambiguous statutory language establishes that the purpose and policy considerations of the Parentage Act apply to the narrow situation of an artificial insemination scenario involving a consenting husband and wife and a sperm donor and, thus, is inapposite to Harlow and Wipaporn's situation of a cohabiting couple who did not use donated sperm.

Although Harlow and Wipaporn were not legally married, Harlow cannot claim, in the context of a motion to dismiss, which admits all well-pled allegations in the complaint and reasonable inferences therefrom, that he was merely a sperm donor. Harlow had an intimate relationship with Wipaporn for several years and participated in a traditional wedding ceremony ritual. Furthermore, he consented in writing to the use of his sperm in the GIFT procedure with Wipaporn and signed the consent form under the designation of "husband." He also acknowledged his parentage of the triplets in emails that discussed his intent to provide financial support for his three sons in the form of trust funds, college funds, and other educational support. In addition, he wrote about his plans to claim the three boys as dependents, take tax deductions for his support payments to them, and enable them to access their rights of United States citizenship, which they had only because he was their father. Moreover, he provided financial support to Wipaporn and the boys for almost one year after the boys were born.

¶ 27 Our supreme court has stated that Illinois's strong interest in protecting and promoting the welfare of children requires that cases involving assisted reproduction must be decided based on the particular circumstances presented. *Id.* at 539. Moreover, Illinois' public policy recognizes "the right of every child to the physical, mental, emotional, and monetary support of his or her parents" and seeks "to prevent children born as a result of assisted reproductive technology procedures from becoming public charges." *Id.* Because an unmarried man who causes conception through sexual relations "is legally obligated to support a child, then the equivalent resulting birth of a child caused by the deliberate conduct of artificial insemination should receive the same treatment in the eyes of the law." *Id.* at 541. Support obligations are imposed for children born out of wedlock, and children will not be deprived of financial support regardless of the method of their conception. *Id.*

¶ 28 Based on our review of Illinois public policy and the repealed Parentage Act, we conclude that the Thai judgment was not contrary to Illinois public policy, and thus the circuit court neither erred by denying Harlow's motion to dismiss Wipaporn's petition nor abused its discretion by extending comity to the Thai judgment. For the same reasons, the circuit court did not err by striking and dismissing Harlow's answer and affirmative defenses that relied on his erroneous interpretation of section 3(b) of the Parentage Act.

¶ 29                                    B. *Res Judicata*

¶ 30 Harlow challenges the circuit court's order that, based on the application of *res judicata*, struck and dismissed his answer and affirmative defenses with prejudice. He argues fundamental fairness required the trial court to relax the application of *res judicata* because Wipaporn obtained the Thai judgment by fraud and he did not have an opportunity to fully present a defense at the trial in Thailand.

¶ 31 The doctrine of *res judicata* is based on the principle that a cause of action, "once adjudicated by a court of competent jurisdiction, should be deemed conclusively settled between the parties and their privies, except in a direct proceeding to review or set aside such adjudication." *Drabik v. Lawn Manor Savings & Loan Ass'n*, 65 Ill. App. 3d 272, 276 (1978). "The basis of the doctrine of *res judicata* is that the party against whom the doctrine is raised has litigated or had an opportunity to litigate the same matter in a former action." *Id.* at 277. "A former judgment is deemed conclusive not only as to all matters litigated and determined, but all matters which might have been presented to support or defeat a claim." *Id.* The

doctrine of *res judicata* prevents repetitive litigation in an effort to obtain judicial economy and to protect litigants from the burden of retrying an identical cause of action with the same party or privy. *Pedigo v. Johnson*, 130 Ill. App. 3d 392, 394 (1985). "*Res judicata* is premised on the notion that the law affords every man his day in court along with the opportunity to present his case on the issues involved." *Id.* at 395. However, it is essential that a defendant actually be afforded the opportunity to appear, present his case, and be heard. *Morey Fish Co. v. Rymer Foods, Inc.*, 158 Ill. 2d 179, 187 (1994). We review *de novo* the circuit court's decision to strike and dismiss Harlow's answer and affirmative defenses. See *Kean v. Wal-Mart Stores, Inc.*, 235 Ill. 2d 351, 361 (2009).

¶ 32    Harlow argues he never had an opportunity for a full and fair hearing in Thailand before a judgment was entered against him because Wipaporn had concealed from him her plan to conceive children by him and then use his wealth to secure permanent financial support for her and her partner. Harlow claims Wipaporn fraudulently used the Thai court system to obtain this judgment against him, and he did not discover her alleged deceit and cohabitation with another man until after the Thai trial court had rendered the paternity and child support judgment against Harlow. He also complains that the Thai court erroneously refused to consider his evidence concerning Illinois public policy and section 3(b) of the Parentage Act.

¶ 33    Harlow's argument lacks merit. The record shows that Harlow argued in his answer filed in the Thai civil suit that Wipaporn had gone through a fertility medical treatment with another person and deceived Harlow by telling him that the three boys were his children. Harlow also argued in his answer that he did not have sexual intercourse with Wipaporn during her fertile period and did not undergo fertility procedures to have children with her. Clearly, Harlow's trial strategy consisted of denying that he was the biological father of the triplets, and it would have been incompatible with that strategy to simultaneously argue that he agreed to the procedure to use his sperm to fertilize Wipaporn's eggs but she tricked him into having those children. In addition, the record indicates that Harlow's counsel submitted a legal memorandum arguing that Illinois law prevented the imposition of a finding of paternity and child support obligations on Harlow, and the Thai supreme court, like this court, rejected Harlow's interpretation of section 3(b) of the Parentage Act.

¶ 34    Harlow was given an opportunity to present his case in Thailand, and he obtained counsel to do so. In the instant appeal, he would like to employ a different strategy from the unsuccessful strategy he tried in Thailand but *res judicata* bars his attempt to relitigate this matter. Finally, Harlow's argument that extending comity to the Thai judgment was improper because his appeals rendered it non-final and unenforceable is moot. In February 2016, the Thai court issued a certificate of case finality in this matter, and this court takes judicial notice of the proceedings and judgment of the Thai court. *Supra* ¶ 10. Accordingly, we conclude the circuit court did not err in striking and dismissing with prejudice Harlow's answer and affirmative defenses pursuant to the doctrine of *res judicata*.

¶ 35                                      III. CONCLUSION

¶ 36    For the above reasons, we affirm the judgment of the circuit court that denied Harlow's motion to dismiss Wipaporn's petition seeking comity for the Thai judgment, struck and dismissed Harlow's answer with prejudice, and enrolled the Thai judgment as an Illinois judgment based on comity. We remand this cause to the circuit court for further proceedings.

¶ 37     Affirmed and remanded.