DALE PRYWELLER, Plaintiff-Appellant, v. GABRIELLA COHEN *et al.*,
Defendants-Appellees.

First District (6th Division)   No. 1—94—3000

Opinion filed July 31, 1996.

Robert Orman, of Chicago, for appellant.

Clausen, Miller, P.C., of Chicago (James T. Ferrini, Michael R. Grimm, Edward M. Kay, and Paul D. Kerpan, of counsel), for appellee Christopher Zaglifa.

Larry S. Kajfes, of Larry S. Kajfes, Ltd., of Chicago, for other appellees.

JUSTICE EGAN delivered the opinion of the court:

This is an appeal by the plaintiff, Dale Pryweller, of the dismissal with prejudice of his amended complaint against the defendants, Gabriella Cohen, Mary Lee, Christopher Zaglifa, Elizabeth Monk and Human Effective Living Programs, Inc. (HELP). The defendants, other than Zaglifa, filed a joint motion to dismiss and have filed a joint brief on appeal; Zaglifa filed a separate motion to dismiss and has filed his own appellate brief.

In count I of the complaint, entitled "Professional Negligence," the plaintiff alleged the following. In 1981, the plaintiff, an attorney licensed to practice in California, was divorced from Eileen Pryweller (Eileen) and began spending six to eight weeks with their children pursuant to court-approved visitation. At the time, his daughter was six years old and his son was eight. In 1984, Eileen began refusing to produce the children for visitation, which caused the plaintiff to enforce his visitation rights through litigation.

In January 1986, Eileen falsely accused him of sexually abusing their daughter in South Bend, Indiana, and she made this accusation for the sole purpose of interfering with the plaintiff's visitation rights. Around the same time, she made a similar complaint in Chicago to the Illinois Department of Children and Family Services (DCFS).

Pursuant to the complaint to DCFS, Eileen and her children came into contact with Cohen, an employee of HELP, which was a DCFS subcontractor. Cohen held herself out as an expert in sexual abuse, but she was not licensed in Illinois to practice medicine, psychology, social work or clinical social work.

The plaintiff alleged that, although the South Bend police determined that no sexual abuse had occurred, Cohen determined that the plaintiff had sexually abused his daughter. Cohen then reported this erroneous determination to DCFS, which, based on Cohen's determination, made a preliminary finding that sexual abuse was "indicated." As an agent of HELP, Cohen then applied to DCFS for payments to treat the daughter, and HELP received payments for this treatment. After learning of the DCFS finding, the plaintiff called Cohen to inform her that Eileen had fabricated the story of sexual abuse to deprive the plaintiff of his visitation rights, but Cohen refused to speak with him.

In April 1986, the Cook County circuit court divorce division terminated the plaintiff's contact with his children based on Cohen's erroneous determination of abuse. In October 1986, however, doctors at Mount Sinai Hospital examined the plaintiff's children and determined that "there was no sexual abuse." Consequently, in December 1986, the circuit court granted the plaintiff supervised visitation.

Thereafter, the defendants treated the plaintiff and his children at the HELP offices. Zaglifa, Monk and Lee were employees of HELP. Zaglifa and Monk were licensed social workers specializing in the care and treatment of sexually abused children. Lee did not possess a license to practice psychology, social work or medicine but held herself out as a psychologist specializing in the care and treatment of sexually abused children.

The plaintiff conditioned his participation in this treatment upon the defendants' agreement that he had not sexually abused his daughter. Despite the defendants' representations to this effect, they continued to provide DCFS with reports indicating that the plaintiff had sexually abused his daughter and continued to treat the plaintiff's children, at DCFS expense, as if abuse had occurred. The treatments for sexual abuse resulted in the children's substantial and possibly irreversible hatred of the plaintiff.

In May 1987, DCFS reversed its finding that sexual abuse was "indicated" and expunged the accusation from its files. However, the treatments ended in June 1987 when the "DCFS finding, on information and belief, expired." In December 1987, the circuit court divorce division entered an agreed order, the substance of which was that "there was no sexual abuse in the first instance."

Based on these alleged facts, the plaintiff claimed that the defendants owed him a duty as psychologists, social workers, clinical social workers or physicians to act with reasonable care in evaluating and treating allegations of sexual abuse. They breached this duty in one or more of the following ways:

"A. Defendants failed to employ competent standards and techniques in determining whether Plaintiff sexually abused his daughter.

B. Defendants improperly treated Plaintiff and his children for sexual abuse even though no such sexual abuse ever transpired.

C. Defendants failed to properly treat Plaintiff and his children and thereby caused the breakdown of the relationship between Plaintiff and his children.

D. Defendants continued to treat Plaintiff and his children for a sex abuse problem even after they learned from Mount Sinai Hospital that no such sexual abuse ever transpired.

E. Defendants failed to disclose their financial interest in their determination that Plaintiff sexually abused his daughter.

F. Defendants otherwise acted carelessly and negligently."

As a result, the plaintiff was deprived of the love and affection of his children, suffered substantial emotional damage and incurred substantial expense.

In count II of the complaint, entitled "Public Nuisance—Implied Cause of Action," the plaintiff alleged that Cohen and Lee violated section 24 of the Medical Practice Act (Ill. Rev. Stat. 1985, ch. 111, par. 4459), section 26 of the Psychologist Registration Act (Ill. Rev. Stat. 1985, ch. 111, par. 5327), and section 19 of the Social Workers Registration Act (Ill. Rev. Stat. 1985, ch. 111, par. 6323) by holding themselves out as psychologists, social workers, clinical social workers or physicians, although they were not licensed to practice these professions.

In count III, the plaintiff alleged that Monk violated section 35 of "An Act creating the Department of Children and Family Services ***" (Ill. Rev. Stat. 1985, ch. 23, par. 5035), by treating the plaintiff's children as an agent of HELP while she was a DCFS employee.

Count IV contained allegations against all of the defendants of conspiracy with Eileen to gain physical and mental custody of the plaintiff's children. In count V, the plaintiff alleged that the

defendants conspired with his wife to destroy his society and companionship with his children.

Zaglifa filed a motion to dismiss under sections 2—615 and 2—619(a)(9) of the Illinois Code of Civil Procedure (735 ILCS 5/2—615, 2—619(a)(9) (West 1992)). In his motion under section 2—619(a)(9), Zaglifa asserted that the defendants complied with the Illinois Abused and Neglected Child Reporting Act (Ill. Rev. Stat. 1985, ch. 23, par. 2051 *et seq.*) (Reporting Act) and that, under the Reporting Act, Zaglifa was immune from liability for his participation in the reporting or investigation of the charge against the plaintiff. In addition, Zaglifa asserted that he should not be liable to the plaintiff because the Mount Sinai Hospital reports indicated that, although there may not have been evidence of "significant" sexual abuse, the plaintiff had engaged in inappropriate behavior toward his daughter. The other defendants joined in Zaglifa's motion and filed their own essentially identical motions to dismiss the complaint under sections 2—615 and 2—619(a)(9).

Zaglifa attached the Mount Sinai psychological evaluation of the daughter to his motion to dismiss. This evaluation stated:

> "[The daughter] said that her father frequently makes a big deal out of having her try on clothes and, while supposedly making sure they fit, touches her, over the clothes, including on the breasts, buttocks, and genital areas. She said that, when she showers, he frequently comes into the bathroom and peeks at her. She also said he spanks her with his hand on her bare buttocks. She did not appear to experience these behaviors as sexually abusive as much as she perceived them as strange and confusing.
>
> \*\*\*
>
> \*\*\* She said her father seems very interested in [pictures taken of her without her clothes]."

The report concluded that she had sex-related anxieties, but these were "considerably less pronounced than is typically the case with children who have been sexually abused." Although she had described inappropriate behavior by her father, it is significantly less severe than behavior typically referred to as "sexual abuse."

The Mount Sinai "Discharge Summary," which Zaglifa also attached to his motion to dismiss, shows that one doctor who evaluated the daughter concluded that she did not have "a history of significant sexual abuse." Another doctor concluded that there was "some evidence of some possible sexual abuse with a very negative impression towards her father, but there is no diagnosis of definite sexual abuse." The discharge summary concluded:

> "Although there were no findings that are consistent with physi-

cal or sexual abuse that could be substantiated by physical examination or through psychological evaluation, it was evident that [the daughter] has experienced distress related to her reaction with her father. Two sources of this stress were indicated by our evaluation. 1) It appears that Mr. Pryweller's reactions with [his daughter] have been inappropriately irrespectful of [his daughter's] needs for sexual boundaries. 2) It appears that Mrs. Pryweller has reacted to her daughter's accounts of interactions with the father in a manner that is hostile to Mr. Pryweller."

Zaglifa attached several additional documents to his reply to the plaintiff's response to the motion to dismiss. These included a "Working Paper" Cohen prepared for DCFS based on her interview with Eileen and her children on January 6, 1986. According to this document, Eileen called the DCFS "hot line" when her daughter reported that the plaintiff had fondled her. Cohen and Chicago police department youth officer Fagan interviewed Eileen and her children. Based on this interview, Cohen concluded in the report that the plaintiff had sexually abused his daughter.

Another document attached to the reply was a DCFS "Investigation Summary." In this summary, dated January 21, 1986, DCFS investigative worker Rudy Harris stated that he interviewed Eileen, her children and the youth officer in person on January 6, 1986. The next day he interviewed Cohen over the telephone, and, on January 14, 1986, he interviewed Eileen and her two children again in person. Based on his investigation, Harris concluded that sexual molestation was "indicated."

Also attached to the reply was a March 1986 letter to Cohen from DCFS referring the Pryweller family case to HELP for treatment. In addition, there were two quarterly reports of treatment by HELP. Cohen, Zaglifa and Monk signed the first, which covered treatment from April to June 1986. Lee, Zaglifa and Monk signed the second, which covered treatment from October 1986 to January 1987.

In an affidavit attached to the reply, Cohen asserted that she was the founder and executive director of HELP. In January 1986, HELP had a contract with DCFS to provide treatment for victims of child sexual abuse. On January 6, 1986, the Chicago police department contacted Cohen to consult with her on a possible felony charge against the plaintiff. Youth Officer Fagan brought Eileen and her children to the HELP offices. After interviewing Eileen and her children, Cohen "formed a good faith belief" that the plaintiff had sexually abused his daughter. She forwarded the written report concerning her opinion of abuse to DCFS after DCFS had made an independent determination that sexual molestation was indicated.

She asserted that her report was prepared in good faith and was based on her expertise as a child care worker. Cohen stated that no one at HELP treated the plaintiff. HELP employees merely supervised three visits he had with his children.

The last attachment to Zaglifa's reply was the contract between HELP and DCFS. This contract provided that DCFS would pay HELP a set amount for each hour of services it provided DCFS.

In a certification the plaintiff attached to his surreply to Zaglifa's motion and his response to the other defendants' motions, the plaintiff asserted that, after learning of the accusations against him from DCFS, he contacted the DCFS investigator, who informed him that Cohen was a therapist involved in the case. He called Cohen, told her the charge was false and asked to discuss the charge with her. She told him that she "did not want to hear it" and ended the call. Had she spoken to him, he would have told her that he had not forced his daughter to model clothes, fondled her, entered the bathroom while his daughter was in the shower or subjected his daughter to spankings, except on rare occasions.

The plaintiff further stated that, between December 1986 and June 1987, Zaglifa and Lee treated him on several occasions. He believed Cohen acted in bad faith because "everyone else who evaluated that same sexual abuse charge concluded, contrary to Defendant Cohen, that there had been no abuse." These others included the South Bend police, Mount Sinai Hospital and DCFS.

Also in the record is Cohen's deposition. She testified that she did not "verify" the information Eileen and her children provided because this was not her role. She became aware of the custody dispute during her initial interview with Eileen on January 6, 1986. After DCFS had determined that abuse was indicated, a DCFS "follow-up worker" referred the family to HELP for treatment at Eileen's request.

Cohen testified that she refused to discuss the case with the plaintiff over the telephone because she could not verify his identity, she was required to keep the information she had about the case confidential, and he became verbally abusive to her. Cohen did not treat anyone from the Pryweller family, although she met with the daughter several times. The Mount Sinai report did not change her mind as to whether abuse had occurred. She also testified that neither she nor any other employee of HELP "treated" the plaintiff because he was not a member of a family residing in Cook County. (The contract between HELP and DCFS provides that "eligibility" for service under the contract is restricted to "families, identified and referred by the Department of Child Welfare staff who are involved in sexual abuse and who reside in Cook County.")

The judge dismissed the plaintiff's complaint with prejudice:

"This cause coming to be heard on Defendant Zaglifa's 2—615 and 2—619 Motions to Dismiss and the remaining Defendants' similar motions \*\*\* it is hereby ordered: that all defendants' motions are granted and all counts against all defendants are dismissed with prejudice based upon the statutory immunity as referenced in the motions."

■ A judge may grant a motion to dismiss when the claim asserted against a defendant is barred by other affirmative matter defeating the claim. 735 ILCS 5/2—619(a)(9) (West 1992); *Meyers v. Rockford Systems, Inc.*, 254 Ill. App. 3d 56, 625 N.E.2d 916 (1993). Affirmative matter is something in the nature of a defense that completely negates the alleged cause of action or refutes crucial conclusions of law or conclusions of material fact that are unsupported by allegations of specific fact, but affirmative matter must do more than merely refute well-pleaded facts in the complaint. *Heller Equity Capital Corp. v. Clem Environmental Corp.*, 232 Ill. App. 3d 173, 596 N.E.2d 1275 (1992).

■ A trial court may grant a motion to dismiss only if, after construing the documents supporting the motion in the light most favorable to the nonmovant, it finds no disputed issues of fact. *Draper v. Frontier Insurance Co.*, 265 Ill. App. 3d 739, 638 N.E.2d 1176 (1994). In support of a motion to dismiss based on other affirmative matter, parties may file affidavits, counteraffidavits and deposition transcripts. *In re Estate of Silverman*, 257 Ill. App. 3d 162, 628 N.E.2d 763 (1993). A court will take as true those facts in a defendant's affidavit supporting his motion to dismiss if the plaintiff fails to refute those facts in a counteraffidavit, notwithstanding contrary unsupported allegations in the plaintiff's pleadings. *Griffin v. Universal Casualty Co.*, 274 Ill. App. 3d 1056, 654 N.E.2d 694 (1995). A reviewing court conducts a *de novo* review of a decision on a motion to dismiss and may, therefore, base its affirmance of that decision on any ground in the record, regardless of whether the trial judge relied on that ground or whether the judge's reasoning was correct. *Nikolic v. Seidenberg*, 242 Ill. App. 3d 96, 610 N.E.2d 177 (1993). An appeal from an order of dismissal under section 2—619 is subject to the same standards as an appeal of an order granting summary judgment. *Kedzie & 103rd Currency Exchange v. Hodge*, 156 Ill. 2d 112, 619 N.E.2d 732 (1993).

■ The plaintiff argues that the judge erred in granting the defendants' motions under section 2—619(a)(9) because there was a question of fact as to whether the defendants acted in good faith and were, therefore, immune from liability under section 9 of the Reporting Act, which provides:

"Any person, institution or agency, under this Act, participating in good faith in the making of a report, or in the investigation of such a report or in the taking of photographs and x-rays or in the retaining a child in temporary protective custody shall have immunity from any liability, civil, criminal or that otherwise might result by reason of such actions. For the purpose of any proceedings, civil or criminal, the good faith of any persons required to report, or permitted to report, cases of suspected child abuse or neglect under this Act, shall be presumed." Ill. Rev. Stat. 1985, ch. 23, par. 2059.

This court has explained that the presumption of good faith under this section applies only to those reporting child abuse under the Reporting Act and not to those performing the other functions listed in section 9 of the Reporting Act. *Falk v. Martel*, 210 Ill. App. 3d 557, 569 N.E.2d 248 (1991); *Lehman v. Stephens*, 148 Ill. App. 3d 538, 499 N.E.2d 103 (1986). Although they are not entitled to the presumption, people, institutions or agencies performing functions other than reporting are still immune from liability if they perform these functions in good faith. *Lehman*, 148 Ill. App. 3d at 551. When good faith is presumed, a plaintiff must come forward with evidence to support a finding of the nonexistence of the presumed fact in order to rebut the presumption. *Lehman*, 148 Ill. App. 3d at 551.

Cohen asserts that she was entitled to immunity under section 9 because she prepared a report of child abuse from her interview on January 6. Zaglifa contends that the plaintiff conceded that he reported child abuse because he alleged that Zaglifa "continued to submit reports to DCFS reflecting that Plaintiff sexually abused his daughter." The other defendants argue that they were immune under section 9 because they participated in the preparation of the quarterly reports concerning the alleged abuse.

The plaintiff concedes in his brief that Cohen was entitled to a presumption of good faith because she "prepare[d] the initial report of the alleged child abuse." He argues, however, that he has come forward with sufficient evidence to rebut the presumption of good faith and to raise a factual question as to Cohen's good faith. The plaintiff disputes that the other defendants were entitled to the presumption of good faith by means of their quarterly reports.

■ We disagree with the plaintiff that he came forward with sufficient evidence to rebut the presumption of good faith and to raise a factual question with regard to Cohen's good faith under section 9. The facts he has presented do not show that she acted in bad faith. He argues that her bad faith is demonstrated by her failure to recuse herself from making a determination of abuse or to disclose her

financial interest in such a determination. The plaintiff explains that Cohen acted under a conflict of interest because, if she indicated that the plaintiff abused his daughter, she would be paid to treat the child abuse but that, if she did not find child abuse, she would receive nothing.

The facts the plaintiff has presented, however, do not support his arguments. The plaintiff has asserted only that Cohen was an employee of HELP, a nonprofit corporation, and that DCFS paid HELP to treat sexually abused children. Based on these facts, it is speculation to conclude that Cohen had a personal financial interest in the determination of abuse in the plaintiff's case. Although HELP may have been paid by the unit of treatment, it does not follow that any money HELP would have received from the treatment of a particular case of sexual abuse would have been passed on to Cohen. Also, the record indicates that HELP was chosen to treat the Prywellers at the request of Eileen and not necessarily as a result of Cohen's abuse determination. Contrary to the plaintiff's argument, these facts do not demonstrate a conflict of interest. Moreover, the plaintiff does not explain to whom Cohen was required to disclose the details of HELP's contract with DCFS. Consequently, we do not believe the plaintiff overcame the presumption of good faith on this basis.

The plaintiff also argues that the fact Cohen refused to speak to him about the case demonstrates her lack of good faith. We disagree. The record indicates that her role in investigating the allegations of child abuse was limited to a report based on the initial interview on January 6, 1986, and that DCFS employee Harris had the primary investigative responsibility. In addition, as Cohen noted in her deposition, she believed she could not speak to the plaintiff because of her obligation to maintain the confidentiality of her contacts with clients. See Ill. Rev. Stat. 1985, ch. 23, par. 2061.

The plaintiff next argues that Cohen's lack of good faith was demonstrated by her failure to examine the daughter's arms for bruises the daughter said were there, her failure to ask Eileen whether she had made other complaints of child abuse and her failure to ask whether there was a custody dispute in this case. He asserts that Cohen also forwarded a copy of her report to Eileen, in violation of the confidentiality provisions of the Reporting Act.

The plaintiff has not provided us with a citation to a portion of the record to support his assertion that Cohen forwarded her report to Eileen, and we have found nothing in the record to support this claim. In addition, the record contradicts the plaintiff's argument that Cohen failed to ask about the existence of a custody dispute because it shows that Cohen did in fact become aware of the custody

dispute during her initial interview with Eileen. Moreover, we disagree that Cohen's failure to ask about other complaints of abuse and to examine the daughter's arms for bruises the daughter said the plaintiff made the month before demonstrates bad faith.

■ The mere fact that Cohen's belief that abuse had occurred, based on what she had been told by the plaintiff's daughter, *might* have been contrary to the determinations of others does not show her bad faith. First, we note that the child was brought to her by a Chicago police youth officer. Cohen could properly surmise that that officer at least suspected that some sexual abuse had occurred. Second, her determination was not contrary to the initial findings of DCFS and the circuit court. Before reversing its determination, DCFS had concluded, apparently based on an independent investigation, that abuse was indicated. The ultimate determination by DCFS reversing that determination came *after* Cohen's report. Also, before entering the agreed order, the circuit court had denied the plaintiff contact with his children based on the abuse allegations.

Cohen's determination that abuse had occurred was also not necessarily contrary to the Mount Sinai report. The plaintiff's statement in his complaint that the Mount Sinai staff determined that no abuse had occurred is inaccurate. Although the staff at Mount Sinai concluded that there was no evidence of *significant* sexual abuse, they did find that the plaintiff had acted inappropriately toward his daughter in a sexual manner. The fact that Cohen found the plaintiff's behavior to be sexual abuse and others did not, therefore, seems to be due to a difference in opinion on the definition of sexual abuse rather than on a lack of good faith.

Given the absence of any facts showing the nonexistence of Cohen's good faith, we hold that the judge properly dismissed the claims against her pursuant to the immunity granted by section 9 of the Reporting Act.

■ We turn now to the applicability of the Reporting Act to the other defendants. We begin our analysis with the observation that we must take the case as it has been presented to us. The plaintiff tells us that "the only relevant issue on appeal" is "whether [the defendants] are entitled to a dismissal with prejudice based upon the presumption of good faith." The plaintiff concedes that Cohen, an employee of HELP, was entitled to the presumption of good faith, but he denies that the remaining defendants, also employees of HELP, are also entitled to the presumption. The reason for the distinction, he insists, is that the statutory presumption attaches only to the "initial" report under the Act and that Cohen made the "initial" report. We disagree with the plaintiff for a number of reasons.

First, his assertion that Cohen made the initial report under the Act is in error. The initial report was made by Eileen when she called the DCFS "hot line." Section 4 of the Act lists all persons who are required by law to report to the DCFS if they have "reasonable cause to believe" a child may be an abused or neglected child. Ill. Rev. Stat. 1985, ch. 23, par. 2054. (Youth Officer Fagan would be one of the persons required by law to report.) This section also provides that "any other person may make a report if such person has reasonable cause to believe a child may be an abused child or a neglected child." Ill. Rev. Stat. 1985, ch. 23, par. 2054.

There is some confusion over whether the youth officer or a representative of DCFS made the second report. We know, at least, that the youth officer brought Eileen and her children to Cohen. But even if we assumed that Cohen had made the initial report, we would hold that there is no reason why Cohen (or Officer Fagan) should be entitled to the presumption while it should be denied to the other defendants. After all, they were "downstream" evaluators. They were apprised of the fact that a Chicago police youth officer, a DCFS investigator, personnel from Mt. Sinai and Cohen had conferred with Eileen and her children and had concluded that there was at least a possibility of sexual child abuse. They did no more than what they were required to do under the contract between HELP and DCFS. That contract specifically requires HELP to submit reports.

In addition, they were entitled to the presumption of good faith under section 9 for filing quarterly reports. Our reading of the Reporting Act as a whole indicates that the word "report" in section 9 is not limited to the initial report of abuse. The Reporting Act itself speaks of an initial, a preliminary and a final report. Section 7.7 provides for the "recording of *initial, preliminary,* and *final* reports." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 23, par. 2057.7. Section 7.9 requires DCFS to "prepare, print, and distribute initial, preliminary, and final reporting forms to each Child Protective Service Unit." Ill. Rev. Stat. 1985, ch. 23, par. 2057.9. There is, therefore, no basis in law or logic why Cohen should be clothed with the presumption, but the other defendants should not.

The plaintiff relies upon Lehman v. Stephens, 148 Ill. App. 3d 538, 499 N.E.2d 103 (1986). In that case the parents of a minor child brought an action against a doctor who had made a report of possible abuse or neglect to DCFS. The appellate court held that the doctor, who made the first report to DCFS, acted presumptively in good faith. The plaintiff reasons that because that case did involve a person who made the initial report, the case stands for the proposition that in all subsequent cases only persons who make the initial report are

presumed to have acted in good faith. This reasoning of the plaintiff is a classic logical fallacy. For these reasons, we conclude that the three other HELP defendants, Zaglifa, Monk and Lee, are presumed to have acted in good faith. We further conclude that the record is bereft of evidence sufficient to overcome that presumption.

For all these reasons, we hold that the trial judge properly granted the defendant's motion to dismiss under section 2—619. Because of that holding, it is unnecessary for us to determine whether the complaint was properly dismissed under section 2—615.

The judgment of the circuit court is affirmed.

Judgment affirmed.

ZWICK, P.J., and McNAMARA, J., concur.