DAWN G. KOSTAL, Plaintiff-Appellee, v. PINKUS DERMATOPATHOLOGY LABORATORY, P.C., *et al.*, Defendants-Appellants.

First District (5th Division)   No. 1—04—1447

Opinion filed April 15, 2005.

Lowis & Gellen, of Chicago (Mark J. Smith, Joan M. Kubalanza, and Jenny Ostrom Blake, of counsel), for appellants.

Cisar & Mrofka, Ltd., of Oak Brook (Thomas J. Cisar, Robert J. Mrofka, and Kenneth G. Miller, of counsel), for appellee.

JUSTICE GALLAGHER delivered the opinion of the court:
Defendants, Pinkus Dermatopathology Laboratory, P.C. (Pinkus),

David A. Mehregan, M.D., and Darius R. Mehregan, M.D. (collectively, defendants), appeal from an order of the circuit court of Cook County denying their motion to quash service of summons and to dismiss plaintiff Dawn G. Kostal's fourth amended complaint for lack of personal jurisdiction. We affirm and remand.

## BACKGROUND

In December 2001, plaintiff, an Illinois resident, visited her physician in Illinois. During that visit, her physician obtained tissue samples and sent them to Pinkus for analysis. Pinkus, a Michigan corporation, is a pathology laboratory that is operated on a national basis. Defendants provide expert diagnostic analysis by mail. Defendants processed and analyzed plaintiff's tissue samples in Michigan, drafted reports in Michigan and sent allegedly inaccurate reports to plaintiff's physician in Illinois.

Plaintiff filed a medical negligence action alleging that, as a result of defendants' negligence, her care and treatment were delayed, requiring extensive medical procedures, and causing her severe and permanent physical injury, pain and suffering, disability, disfigurement and the loss of a normal life.[1] Defendants filed a special appearance to quash service of summons and to dismiss plaintiff's fourth amended complaint for lack of personal jurisdiction.[2] The trial court denied defendants' motion. Defendants now appeal pursuant to Supreme Court Rule 306(a)(3) (155 Ill. 2d R. 306(a)(3)).

## ANALYSIS

■ The sole issue on appeal is whether the State of Illinois can assert jurisdiction over the nonresident defendants. Plaintiff bears the burden of establishing a valid basis for asserting jurisdiction over defendants. *Morecambe Maritime, Inc. v. National Bank of Greece, S.A.*, 354 Ill. App. 3d 707, 710, 821 N.E.2d 780, 784 (2004) ("Plaintiff bears the burden of establishing a *prima facie* case for the assertion of personal jurisdiction over defendant; however, uncontradicted evidence may overcome the *prima facie* case and defeat jurisdiction").

■ The standard of review is *de novo* when a trial court determines jurisdiction solely on the basis of documentary evidence. *Morecambe Maritime, Inc. v. National Bank of Greece, S.A.*, 354 Ill. App. 3d at 710, 821 N.E.2d at 784; *Zazove v. Pelikan, Inc.*, 326 Ill. App. 3d 798, 802, 761 N.E.2d 256, 259 (2001). In the instant case, the trial court heard no courtroom testimony with respect to the issue of personal jurisdiction. Therefore, our review is *de novo*.

---

[1]Plaintiff filed suit against other defendants, all of whom have filed answers to plaintiff's complaint.

[2]Defendants had also opposed plaintiff's previously filed complaints.

As in other *de novo* reviews, it is the trial court's judgment that is before us on review, not the trial court's reasoning. See, *e.g., City of Chicago v. Holland*, 206 Ill. 2d 480, 491-92, 795 N.E.2d 240, 247-48 (2003) (summary judgment); *Pryweller v. Cohen*, 282 Ill. App. 3d 899, 907, 668 N.E.2d 1144, 1149 (1996) (motion to dismiss); *Makowski v. City of Naperville*, 249 Ill. App. 3d 110, 115, 617 N.E.2d 1251, 1255) (1993) (summary judgment). Thus, our function is to determine whether the trial court's decision was correct, regardless of the reasoning or the grounds for that decision. *Holland*, 206 Ill. 2d at 492, 795 N.E.2d at 247-48. If the judgment is correct, we may affirm it on any ground present in the record. *Holland*, 206 Ill. 2d at 492, 795 N.E.2d at 247-48; *Pryweller v. Cohen*, 282 Ill. App. 3d at 907, 668 N.E.2d at 1149.

### Illinois' Long-Arm Statute

■ The parties agree that whether Illinois can exercise jurisdiction over defendants rests on the applicability of Illinois' long-arm statute. 735 ILCS 5/2—209 (West 2002). Illinois' long-arm statute provides several bases for jurisdiction over a nonresident defendant and provides, in relevant part, as follows:

"(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business within this State;

(2) The commission of a tortious act within this State;
* * *

(7) The making or performance of any contract or promise substantially connected with this State;
* * *

(b) A court may exercise jurisdiction in any action arising within or without this State against any person who:
* * *

(4) Is a natural person or corporation doing business within this State.

(c) A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2—209 (West 2002).

Before the trial court, plaintiff's counsel conceded that plaintiff's bases for the court's asserting personal jurisdiction over defendants were subsections (a)(1) and (a)(2). The trial court expressly based its decision on these two subsections. In addition, the trial court relied on

*Weiden v. Benveniste*, 298 Ill. App. 3d 531, 699 N.E.2d 151 (1998), which in turn relied on subsection (c) of Illinois' long-arm statute. Thus, the trial court also impliedly based its decision on subsection (c). Now, on appeal, plaintiff has relied on subsections (a)(1), (a)(2), and (c), and has additionally raised subsection (b)(4) of Illinois' long-arm statute as bases for jurisdiction. Defendants contend that Illinois' assertion of jurisdiction over them is improper under any of these subsections of Illinois' long-arm statute.

We shall first briefly address plaintiff's new argument that jurisdiction over defendants is permissible pursuant to section 2—209(b)(4) of the long-arm statute. 735 ILCS 5/2—209(b)(4) (West 2002). Section 2—209(b)(4) of Illinois' long-arm statute allows Illinois to exercise jurisdiction over a nonresident defendant who is "doing business within" Illinois. Jurisdiction based upon a party's "doing business" in Illinois was recognized by Illinois courts before it was codified as section 2—209(b)(4). *Hendry v. Ornda Health Corp.*, 318 Ill. App. 3d 851, 853, 742 N.E.2d 746, 748 (2000), citing *Gaidar v. Tippecanoe Distribution Service, Inc.*, 299 Ill. App. 3d 1034, 1041, 702 N.E.2d 316, 320 (1998).

■ There is a distinction between the "doing business" theory now codified in subsection (b)(4) of Illinois' long-arm statute and the "transaction of business" theory under section (a)(1) of the statute. Under the "doing business" theory, a corporation becomes subject to the state's jurisdiction if the corporation "engages in a continuous and systematic course of business in the State," even if the subject lawsuit has no relationship to that business. *Kadala v. Cunard Lines, Ltd.*, 226 Ill. App. 3d 302, 314, 589 N.E.2d 802, 810 (1992). The "doing business" standard is quite high, but once satisfied, a corporation is considered a resident of Illinois and may be sued on *any* cause of action, *regardless* of whether it arose out of the corporation's contacts with the state. *Haubner v. Abercrombie & Kent International, Inc.*, 351 Ill. App. 3d 112, 119, 812 N.E.2d 704, 711 (2004). This is known as general jurisdiction. *Forrester v. Seven Seventeen HB St. Louis Redevelopment Corp.*, 336 Ill. App. 3d 572, 784 N.E.2d 834 (2002). Alternatively, under the "transaction of business" theory, the state has jurisdiction "if the corporation transacts any business within the State *and* a cause of action arises from that transaction." (Emphasis added.) *Kadala v. Cunard Lines, Ltd.*, 226 Ill. App. 3d at 314, 589 N.E.2d at 810. Such jurisdiction is specific. See, *e.g.*, *Bombliss v. Cornelsen*, 355 Ill. App. 3d 1107, 1112 (2005) ("Specific jurisdiction refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum").

■ As noted, plaintiff's counsel conceded below that plaintiff was

not contending that Illinois could assert general jurisdiction over defendants and that this case involved specific jurisdiction. Thus, the trial court decided that Illinois could exercise specific jurisdiction over defendants. Because we agree with the trial court that there are minimum contacts in this case sufficient to support jurisdiction, we see no need to further discuss plaintiff's newly raised argument that defendants' affidavits and admissions demonstrate that they are "doing business" in Illinois. Likewise, we need not address defendants' contentions that the facts set forth in their affidavits overcome plaintiff's *prima facie* basis for asserting jurisdiction. The statements in defendants' affidavits relate to their lack of physical presence and are relevant only to the issue of whether defendants are "doing business" in Illinois, which would subject them to general jurisdiction. In any event, the instant cause of action is for medical negligence which allegedly arose from, and is specifically related to, defendants' contacts with Illinois. Thus, a specific jurisdiction analysis applies.

■ Defendants, citing the 1996 case of *International Business Machines Corp. v. Martin Property & Casualty Insurance Agency, Inc.*, 281 Ill. App. 3d 854, 666 N.E.2d 866 (1996), contend that a court must employ a two-step analysis to determine whether jurisdiction is proper under Illinois' long-arm statute.[3] But the two-step analysis described in that case is no longer necessary. That is because the Illinois long-arm statute was amended, effective September 7, 1989, to include a so-called "catchall provision." *Mors v. Williams*, 791 F. Supp. 739, 741 (N.D. Ill. 1992); see also *Adams v. Harrah's Maryland Heights Corp.*, 338 Ill. App. 3d 745, 789 N.E.2d 436 (2003). This catchall provision, which is subsection (c), states that a court "may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois constitution and the Constitution of the United States." 735 ILCS 5/2—209(c) (West 2002).

Illinois courts now treat subsection (c) as an independent basis for exercising personal jurisdiction over a defendant. See, *e.g.*, *Adams*, 338 Ill. App. 3d at 747-48, 789 N.E.2d at 439; *Alderson v. Southern Co.*, 321 Ill. App. 3d 832, 856, 747 N.E.2d 926, 946 (2001); see also *Weiden*, 298 Ill. App. 3d at 533, 699 N.E.2d at 153 (stating that Illinois' long-arm statute is now coextensive with the due process requirements of the state and federal constitutions); see also E.

---

[3]The *International Business Machines Corp.* court and other cases cited by defendants, including *Alpert v. Bertsch*, 235 Ill. App. 3d 452 (1992), allude to this two-step analysis in reliance on the 1986 Illinois Supreme Court case, *R.W. Sawant & Co. v. Allied Programs Corp.*, 111 Ill. 2d 304, 489 N.E.2d 1360 (1986).

Anderson, *The Long Reach of Illinois' Long-Arm Statute: The Catch-All Provision,* 84 Ill. B.J. 504 (1996). Thus, if the contacts between a defendant and Illinois are sufficient to satisfy both federal and state due process concerns, the requirements of Illinois' long-arm statute have been met, and no other inquiry is necessary. *Zazove v. Pelikan, Inc.,* 326 Ill. App. 3d 798, 803, 761 N.E.2d 256, 260 (2001); *W.R. Grace & Co. v. CSR Ltd.,* 279 Ill. App. 3d 1043, 1047, 666 N.E.2d 8, 10 (1996). In other words, the first step, which involves a determination of whether a defendant did any of the acts enumerated in the statute, is "wholly unnecessary." *Dehmlow v. Austin Fireworks,* 963 F.2d 941, 945 (7th Cir. 1992) (noting that "[t]he first inquiry is wholly unnecessary in the case of many modern state statutes [including Illinois' long-arm statute] which include catch-all provisions that grant to state courts jurisdiction over all matters in which the state may constitutionally assert jurisdiction"); see also *Adams,* 338 Ill. App. 3d at 747, 789 N.E.2d at 439 ("Although, at one time, subsection (a) of the long-arm statute listed the only acts that could form the basis for personal jurisdiction, subsection (c) was added in a 1989 amendment and is a catchall provision"); *Mors v. Williams,* 791 F. Supp. 739, 741 (N.D. Ill. 1992) ("Stated differently, if due process is satisfied, jurisdiction is met under Section 2—209(c) of Illinois' long-arm statute irrespective of whether a defendant has done any of the acts set forth under Section 2—209(a)(1)—(14)").

Although the former two-step inquiry is no longer necessary under Illinois' long-arm statute, it has been noted that a new two-step inquiry may be required pursuant to the Illinois Supreme Court case of *Rollins v. Ellwood,* 141 Ill. 2d 244, 565 N.E.2d 1302 (1990), which determined "that jurisdiction in Illinois must be analyzed under the due process guarantees of *both* the United States *and* Illinois Constitutions." (Emphasis added.) *Damian Services Corp. v. PLC Services, Inc.,* 763 F. Supp. 369, 371 (N.D. Ill. 1991). The *Rollins* court "unequivocally stated that the Illinois Constitution, which contains its own separate and independent guarantee of due process, must also be satisfied." *Mors v. Williams,* 791 F. Supp. 739, 741 (N.D. Ill. 1992), citing *Rollins,* 141 Ill. 2d at 275, 565 N.E.2d at 1316. As this court has determined, "[a]lthough the legislative intent [in passing the 1989 amendments to Illinois' long-arm statute] may have been to expand Illinois courts' jurisdiction over nonresidents to the extent permitted by the Federal due process clause," under *Rollins,* this court is bound to independently determine whether the exercise of jurisdiction over nonresident defendants also comports with state due process concerns. *People ex rel. Hartigan v. Kennedy,* 215 Ill. App. 3d 880 (1991); accord *G.M. Signs, Inc. v. Kirn Signs, Inc.,* 231 Ill. App. 3d 339, 342, 596 N.E.2d 212, 214 (1992).

We note that several recent federal court decisions have commented upon the pronounced concerns of the *Rollins* court. While acknowledging the *Rollins* court's concern that the due process standard of the Illinois Constitution and that of the United States Constitution hypothetically might diverge in some cases, these courts have suggested that no operative difference exists between the federal limitations on personal jurisdiction and the limits imposed by the Illinois Constitution. See *Hyatt International Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997); *Klump v. Duffus*, 71 F.3d 1368, 1372 n.4 (7th Cir. 1995). Most recently, a federal court stated as follows: "Because Illinois courts have not elucidated any 'operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction,' the two constitutional analyses collapse into one." *Allied Van Lines, Inc. v. Gulf Shores Moving & Storage, Inc.*, No. 04 C 6900 (N.D. Ill. February 23, 2005), quoting *Hyatt*, 302 F.3d at 715. We have not found any post-*Rollins* Illinois case dealing with *in personam* jurisdiction where the requirements of federal due process were deemed to be met, but Illinois' due process requirements were not. Nevertheless, our supreme court has reaffirmed the concern of the *Rollins* court, again noting the possibility that, under certain circumstances, a difference could exist between federal due process guarantees and our own state due process guarantee. See *People v. Lindsey*, 199 Ill. 2d 460, 468, 771 N.E.2d 399, 406 (2002) ("Under certain circumstances, we may construe our state provisions more broadly than their federal counterparts"); see also *Van Harken v. City of Chicago*, 305 Ill. App. 3d 972, 982, 713 N.E.2d 754, 762 (1999) (noting that because our state constitution provides broader rights of due process than the federal constitution, our supreme court has been reluctant to apply the lockstep doctrine in cases involving due process). Pursuant to *Rollins*, we must consider whether the court's exercise of personal jurisdiction satisfies *both* the federal and state due process guarantees.

### Federal Due Process Standards for Personal Jurisdiction

■ Under federal due process standards, a court may exercise personal jurisdiction over a nonresident defendant if the defendant has had sufficient "minimum contacts" with the forum state such that maintenance of the suit in the forum does not offend " 'traditional notions of fair play and substantial justice.' [Citation.]" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158 (1945); *Zazove*, 326 Ill. App 3d at 803, 761 N.E.2d at 260. A nonresident defendant can only be subjected to the authority of the

forum state if the defendant's conduct and connections with the forum are such that it is reasonably foreseeable that it would be haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980). "By requiring that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,' [citation], the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.' [Citation.]" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 85 L. Ed. 2d 528, 540, 105 S. Ct. 2174, 2182 (1985). Where, as here, a state seeks to assert specific jurisdiction over a nonresident defendant who has not consented to suit there, the "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the state *and* the suit involves alleged injuries that "arise out of or relate to" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 85 L. Ed. 2d 528, 540-41, 105 S. Ct. 2174, 2182 (1985).

In determining whether a defendant has had "fair warning" or should "reasonably anticipate" being haled into an out-of-state court, federal courts have relied upon the following reasoning:

" 'The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75, 85 L. Ed. 2d 528, 542, 105 S. Ct. 2174, 2183 (1985), quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L. Ed. 2d 1223, 1239-40, 78 S. Ct. 1283, 1298 (1958).

As the *Burger King* court explained:

"We have noted several reasons why a forum legitimately may exercise personal jurisdiction over a nonresident who 'purposefully directs' his activities toward forum residents. A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. [Citations.] Moreover, where individuals 'purposefully derive benefit' from their interstate activities [citation], it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed.

And because 'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity,' it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity. [Citation.]" *Burger King,* 471 U.S. at 473-74, 85 L. Ed. 2d at 541, 105 S. Ct. at 2182-83. We keep these principles in mind in deciding whether the exercise of personal jurisdiction over defendants comports with federal due process.

### Illinois Due Process Standards for Personal Jurisdiction

■ Under the Illinois Constitution's due process guarantee, a court may exercise jurisdiction "only when it is fair, just and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood,* 141 Ill. 2d 244, 275, 565 N.E.2d 1302, 1316 (1990); see also *Weiden,* 298 Ill. App. 3d at 534, 699 N.E.2d at 153. Thus, our analysis must further consider whether Illinois' due process concerns are satisfied.

### Out-of-State Doctor Cases

■ In determining whether to assert personal jurisdiction over an out-of-state doctor, special jurisdictional rules have evolved to ensure that jurisdiction is asserted only when that physician has purposefully availed himself of the privileges of conducting activities in the patient's state. *Kennedy v. Freeman,* 919 F.2d 126, 129 (10th Cir. 1990). Courts have developed these special rules "when doctors who have essentially local practices become involved in another state not as a result of their intention to do so but, rather, as a result of the action of their out-of-states [*sic*] patients." *Kennedy v. Freeman,* 919 F.2d at 129.

The underlying rationale for these special jurisdictional rules is the rejection of the so-called "portable tort" theory as applied to physicians with local practices outside the forum state. This theory had its genesis in *Gray v. American Radiator & Standard Sanitary Corp.,* 22 Ill. 2d 432, 176 N.E.2d 761 (1961), in which the Illinois Supreme Court construed the "tortious act" provision of the long-arm statute. In *Gray,* the plaintiff was injured when a water heater exploded, as a result of an allegedly defective valve produced by the nonresident manufacturer defendant. The *Gray* court concluded that jurisdiction was proper over the defendant because the "last event" was the exploding of the water heater, without which there would have been no injury to plaintiff and no tortious event. Thus, although the defendant was never present in Illinois, the *Gray* court held that

the tortious act occurred in Illinois because the place of a wrong was where the "last event" took place that was necessary to make the defendant liable. *Gray*, 22 Ill. 2d at 435.

As defendants now correctly note, "[f]or due process purposes, doctors should not be treated like manufacturers of products." *Lemke v. St. Margaret Hospital*, 552 F. Supp. 833, 837 (N.D. Ill. 1982). The Illinois Supreme Court declined to apply the *Gray* rationale to a professional malpractice claim involving an attorney. *Yates v. Muir*, 112 Ill. 2d 205, 492 N.E.2d 1267 (1986). The *Yates* court then stated as follows:

> "Having held that no tortious act occurred in Illinois, we need not consider whether the defendant's rights under the standards of the due process clause have been violated." *Yates*, 112 Ill. 2d at 210, 492 N.E.2d at 1269.

This court has noted, however, that *Yates* was decided before the 1989 amendment to the long-arm statute that extended jurisdiction to the full extent allowed by state and federal due process. See *Zazove*, 326 Ill. App. 3d at 807, 761 N.E.2d at 263. Nonetheless, in *dicta*, the *Yates* court also stated as follows:

> "We would, however, observe that the conclusion we reach in favor of the defendant is consistent with decisions under the due process clause that residents of one State who travel to another jurisdiction for medical treatment cannot prosecute a malpractice action in their State of residence for injuries arising out of that treatment. [Citations.]" *Yates*, 112 Ill. 2d at 210, 492 N.E.2d at 1269.

In this appeal, defendants now rely on some of these same decisions cited by *Yates*, specifically, *Veeninga v. Alt*, 111 Ill. App. 3d 775, 444 N.E.2d 780 (1982), *Ballard v. Rawlins*, 101 Ill. App. 3d 601, 420 N.E.2d 532 (1981), and *Muffo v. Forsyth*, 37 Ill. App. 3d 6, 345 N.E.2d 149 (1976), as well as the federal case of *Lemke v. St. Margaret Hospital*, 552 F. Supp. 833 (N.D. Ill. 1982). Defendants contend that these cases are on point and compel dismissal of this case. We disagree.

We first note that, in some of these cases, it is not always clear whether the decisions were based upon the "tortious act" analysis, a due process analysis or both. See, *e.g.*, *Lemke*, 552 F. Supp. at 837 (noting that *Ballard* and *Muffo* do not specify whether jurisdiction was lacking as a matter of local statutory interpretation of the tortious act provision of the long-arm statute or on due process grounds). We also note that plaintiff here has also not directly addressed defendants' argument that the cases of *Ballard* and *Muffo* are dispositive, nor has plaintiff distinguished these cases, other than arguing that the trial court's reliance on *Weiden* was correct. Our review of these cases reveals that the underlying rationale is the same as that in

*Yates v. Muir*, 112 Ill. 2d 205, 492 N.E.2d 1267 (1986), and *Wright v. Yackley*, 459 F.2d 287, 289-90 (9th Cir. 1972). Thus, we shall discuss the reasoning of these cases and explain why that reasoning does not apply to the instant case.

The seminal case for the proposition that the tortious rendition of medical services outside the forum state is not a portable tort that would subject an out-of-state doctor to jurisdiction in the forum is *Wright v. Yackley*, 459 F.2d 287 (9th Cir. 1972), which was a medical malpractice action by an Idaho resident against a South Dakota physician. The plaintiff had seen the physician in South Dakota and received a prescription with unlimited refills. *The plaintiff then moved to Idaho.* Four months after being last treated by the defendant, at the plaintiff's request and without charge, the defendant furnished copies of the original prescription to allow the plaintiff to have the prescription filled in Idaho. The plaintiff filed suit in Idaho alleging that she was injured by use of the drugs. The district court dismissed the case for lack of personal jurisdiction over the defendant. The court of appeals affirmed, concluding that no tort was committed within the state of Idaho that would confer jurisdiction under Idaho's long-arm statute.

As the *Wright v. Yackley* court explained:

"In the case of personal services focus must be on the place where the services are rendered, since this is the place of the receiver's (here the patient's) need. The need is personal and the services rendered are in response to the dimensions of that personal need. They are directed to no place but to the needy person herself. It is in the very nature of such services that their consequences will be felt wherever the person may choose to go. However, the idea that tortious rendition of such services is a portable tort which can be deemed to have been committed wherever the consequences foreseeably were felt is wholly inconsistent with the public interest in having services of this sort generally available. Medical services in particular should not be proscribed by the doctor's concerns as to where the patient may carry the consequences of his treatment and in what distant lands he may be called upon to defend it. The traveling public would be ill served were the treatment of local doctors confined to so much aspirin as would get the patient into the next state. The scope of medical treatment should be defined by the patient's needs, as diagnosed by the doctor, rather than by geography." *Wright v. Yackley*, 459 F.2d 287, 289-90 (9th Cir. 1972).

See also *Mosier v. Kinley*, 142 N.H. 415, 420-21, 702 A.2d 803, 807 (1997).

As one court further explained:

" 'When one seeks out services which are personal in nature, such as those rendered by attorneys, physicians, dentists, hospitals or accountants, *and travels to the locality where he knows the*

*services will actually be rendered,* he must realize that the services are not directed to impact on any particular place, but are directed to the needy person himself. While it is true that the nature of such services is that if they are negligently done, their consequences will thereafter be felt wherever the client or patient may go, it would be fundamentally unfair to permit a suit in whatever distant jurisdiction *the patient may carry* the consequences of his treatment, or the client the consequences of the advice received.' " (Emphasis added.) *Hogan v. Johnson,* 39 Wash. App. 96, 101, 692 P.2d 198, 201 (1984), quoting *Gelineau v. New York University Hospital,* 375 F. Supp. 661, 667 (D.N.J. 1974).

We note that the *Gelineau* court went on to state as follows:

"Unlike a case involving voluntary interstate or international economic activity, *** which is directed at the forum state's markets, the residence of a recipient of personal services rendered elsewhere is irrelevant and totally incidental to the benefits provided by the defendant at his own location. It is clear that when a client or *a patient travels to receive professional services without having been solicited* (which is prohibited by most professional codes of ethics), then the client, who originally traveled to seek services apparently not available at home, ought to expect that he will have to travel again if he thereafter complains that the services sought by him in the foreign jurisdiction were therein rendered improperly.

Any other rule would seem to be not only fundamentally unfair, but would inflict upon the professions the obligation of traveling to defend suits brought in foreign jurisdictions, sometimes very distant jurisdictions, there brought solely because *the patient or client upon his return to his own home decided to sue at home for services sought by himself abroad.*" (Emphasis added.) *Gelineau,* 375 F. Supp. at 667 (cited with approval in *Yates v. Muir,* 112 Ill. 2d 205, 492 N.E.2d 1267 (1986)).

The instant case is distinguishable from the line of cases following *Wright v. Yackley,* including those cited by defendants. The main difference is that plaintiff here did not travel out of state, visit a doctor with a local practice, receive treatment and carry the consequences of treatment back to the forum. Here, instead, defendants purposefully directed their activities here. The distinction between defendants' activities and that of the local doctors in the cases cited by defendant is substantial. "From the very nature of the average doctor's localized practice, there is no systematic or continuing effort on the part of the doctor to provide services which are to be felt in the forum state." *Wright v. Yackley,* 459 F.2d at 290. The average local doctor, who treats a patient who has traveled to that doctor's state, is not thereby engag-

ing in "voluntary, interstate economic activity." These defendants, however, by the very nature of their business and practice, operate nationally. This is true for both the physicians and the diagnostic laboratory. Thus, the distinction between product manufacturers and doctors with local practices is not entirely applicable to the present case.[4]

We therefore conclude that defendants' contention that the cases of *Veeninga v. Alt*, 111 Ill. App. 3d 775, 444 N.E.2d 780 (1982), *Ballard v. Rawlins*, 101 Ill. App. 3d 601, 420 N.E.2d 532 (1981), *Muffo v. Forsyth*, 37 Ill. App. 3d 6, 345 N.E.2d 149 (1976), and *Lemke v. St. Margaret Hospital*, 552 F. Supp. 833 (N.D. Ill. 1982), are more analogous to the case at bar is incorrect. Those pre-1989 cases were decided before our legislature amended Illinois' long-arm statute and added the catchall provision. More importantly, all four cases involved unilateral activity on the part of the plaintiffs seeking treatment who traveled to the nonresident doctor's home state for services and then returned home to the forum state. This is the typical scenario in the line of cases following *Wright v. Yackley* that rejects the portable tort theory. By contrast, in the instant case, plaintiff *never* traveled to Michigan and received no treatment in Michigan. Plaintiff at all times relevant was in Illinois. Defendants erroneously conclude that whether plaintiff physically traveled to Michigan is irrelevant since her tissue traveled there at the unilateral request of her physician and on her behalf. This scenario does not equate with the type of unilateral activity of the patients in the *Wright v. Yackley* line of cases. We reject defendants' attempt to characterize their diagnosis and provision of services and treatment via mail to an Illinois resident as identical to mere advertising followed by "unilateral activity" on the part of the plaintiff seeking medical treatment. We also reject defendants' characterization of plaintiff engaging in such unilateral activity through her "agent" Illinois physician.

As the *Wright v. Yackley* court explained:

> "The mailing of the prescriptions to Idaho did not constitute new prescription. *It was not diagnosis and treatment by mail.* It was simply confirmation of the old diagnosis and prescription and was recognized by the druggist as such." (Emphasis added.) *Wright v. Yackley*, 459 F.2d at 288-89.

---

[4]Plaintiff has also contended that *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill. 2d 432 (1961), applies to the instant case without discussing the rejection of the portable tort theory as applied to malpractice cases. Plaintiff has also cited, for this proposition, an appellate court decision that was reversed by our supreme court in *Yates v. Muir*, 112 Ill. 2d 205, 492 N.E.2d 1267 (1986), as mentioned above.

But as the court additionally explained:

> "The balance of factors involved in a due process determination might be different if a doctor could be said to have treated an out-of-state patient by mail or to have provided a new prescription or diagnosis in such fashion. In that event, the forum state's interest in deterring such interstate medical service would surely be great. Here, however, the mailing of the copies was simply reflective of, and indeed a part of, the earlier treatment and prescription." *Wright v. Yackley*, 459 F.2d at 289 n.4.

Thus, it was long ago recognized that even "[t]he bellwether case of *Wright v. Yackley* [citation] established a distinction between a situation where one ventures into a foreign state, receives medical treatment, returns to his home state and suffers injurious consequences, and a case where the nonresident physician diagnoses and treats a patient by mail." *Hume v. Durwood Medical Clinic, Inc.*, 282 S.C. 236, 241, 318 S.E.2d 119, 122 (App. 1984).

Plaintiff cites the case of *Kennedy v. Freeman*, 919 F.2d 126 (10th Cir. 1990). Defendants are correct in noting that *Kennedy* is a case from a foreign jurisdiction that is not binding upon this court (see, e.g., *Mount Vernon Fire Insurance Co. v. Heaven's Little Hands Day Care*, 343 Ill. App. 3d 309, 320, 795 N.E.2d 1034, 1044 (2003). Although they are not binding, comparable court decisions of other jurisdictions "are persuasive authority and entitled to respect." *In re Marriage of Raski*, 64 Ill. App. 3d 629, 633, 381 N.E.2d 744, 748 (1978). When there is Illinois case law directly on point, we need not look to case law from other states for guidance (*Graham v. Commonwealth Edison Co.*, 318 Ill. App. 3d 736, 744, 742 N.E.2d 858, 865 (2000)); however, no Illinois case is directly on point.

We agree that the facts of the instant case are more analogous to those in *Kennedy*. Defendants offer no argument regarding the analysis in that case, but merely note that no Illinois appellate court case has relied on *Kennedy* in the 14 years since it was decided. This court finds *Kennedy* to be entirely well reasoned, persuasive and valuable to our analysis.

*Kennedy* involved an Oklahoma resident who sought treatment from her doctor in Oklahoma. The Oklahoma physician removed a skin lesion and sent it to the defendant, Dr. Freeman in Texas. Dr. Freeman willingly accepted the sample and sent a report back to the plaintiff's physician in Oklahoma. Dr. Freeman knew of the significance of his diagnosis and that it would be used in treating the plaintiff. The report was inaccurate, and, due to Dr. Freeman's error, the plaintiff was given no treatment or follow-up care. The plaintiff learned, four years later, that malignant melanoma had spread over her entire body.

The plaintiff sued in federal court for negligence. The district court granted the defendant's motion to dismiss for lack of personal jurisdiction, but the Tenth Circuit Court of Appeals reversed. *Kennedy v. Freeman*, 919 F.2d 126 (10th Cir. 1990).

The *Kennedy* court applied Oklahoma's long-arm statute, which, similar to Illinois' long-arm statute, is coextensive with the due process requirements of the state and federal constitutions.[5] The *Kennedy* court discussed the general principles of specific jurisdiction, including the purposeful availment requirement. *Kennedy*, 919 F.2d at 128-29. The court stated that "[w]hether a 'party solicited the business interface is irrelevant, so long as defendant then directed its activities to the forum resident.' " *Kennedy*, 919 F.2d at 129, quoting *Lanier v. American Board of Endodontics*, 843 F.2d 901, 910 (6th Cir. 1988), *cert. denied*, 488 U.S. 926, 102 L. Ed. 2d 329, 109 S. Ct. 310 (1988).

The *Kennedy* court held that Dr. Freeman's actions were sufficient to establish personal jurisdiction. In so doing, the court stated as follows:

"While Freeman did not solicit Kennedy's business in Oklahoma, he did purposefully direct his actions there. He willingly accepted the sample from Oklahoma; he signed a report establishing the thickness of [the] lesion; and he evidently sent his bill there. Freeman rendered his diagnosis to Kennedy in Oklahoma, through the mail, knowing its extreme significance and that it would be the basis of Kennedy's further treatment there." *Kennedy*, 919 F.2d at 129.

The same analysis applies here. Defendants purposefully directed their activities at Illinois. It is undisputed that defendants willingly received plaintiff's tissue specimens from Illinois in containers supplied by them free of charge, generated three diagnostic reports that were faxed or mailed to Illinois knowing they would be relied upon by plaintiff's physician and rendered a diagnosis knowing that it would form the basis of plaintiff's further treatment in Illinois. As plaintiff further notes, however, her case here is even stronger and bolstered by defendants' admission of a prior, ongoing relationship with plaintiff's doctor, sending him blank requisition slips and other biopsy supplies to his Illinois office, combined with the fact that defendants held themselves out via the Internet as "nationwide" service providers.

In *Kennedy*, the plaintiff was being treated in another state, the

---

[5]The relevant statute provided as follows: "A court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." Okla. Stat. Tit. 12, § 2004(F) (Supp. 1989); *Kennedy*, 919 F.2d at 128 n.1.

forum state, at the time that the defendant essentially injected himself into the patient's treatment and provided the service, and that service directly affected the decisions regarding the patient's ongoing treatment in the forum state. Likewise, defendants here injected themselves into plaintiff's treatment in Illinois and, similar to the defendant in *Kennedy*, in effect rendered a diagnosis by mail and actually provided medical treatment in the forum state.

We agree with the court that described *Kennedy* as a case in which "the doctor's services [were] fundamentally interstate in nature from the inception of the relationship." (Emphasis omitted.) *Prince v. Urban*, 49 Cal. App. 4th 1056, 1061, 57 Cal. Rptr. 2d 181, 184 (1996). The *Prince* court noted that "[t]he diagnosis—which was, after all, the critical service provided by the Texas doctor—was made 'through the mail' [Citation.]" (Emphasis omitted.) *Prince v. Urban*, 49 Cal. App. 4th at 1061, 57 Cal. Rptr. 2d at 184. The *Prince* court distinguished this activity from other forms of communication that would not constitute the prerequisite minimum contacts, such as "[f]ollow[-]up consultation ancillary to the examination and treatment made by the out-of-state doctor, telephone calls about the status of an out-of-state patient, or arrangements for a patient to continue with medication prescribed by that doctor." *Prince*, 49 Cal. App. 4th at 1061, 57 Cal. Rptr. 2d at 184. The *Prince* court cited *Ballard v. Rawlins*, 101 Ill. App. 3d 601, 420 N.E.2d 532 (1981), and *Muffo v. Forsyth*, 37 Ill. App. 3d 6, 345 N.E.2d 149 (1976), as examples of cases where the prerequisite minimum contacts were lacking.

As noted earlier, the trial court relied upon *Weiden v. Benveniste*, 298 Ill. App. 3d 531, 699 N.E.2d 151 (1998). The trial court correctly concluded that the facts in *Weiden* were distinguishable from the instant case. Unlike the trial court, however, we do not believe that knowledge on the part of the physician that the patient is from another state is a dispositive factor, particularly where the doctor has a localized practice. In *Weiden*, because there was *no* contact between the defendant physicians and Illinois, the court did not need to address the sufficiency of any contact and did not really need to apply the jurisdictional standards of due process—state or federal—to the facts of that case.

The instant case is factually similar to *Kennedy v. Freeman*, 919 F.2d 126 (10th Cir. 1990), and we agree with its analysis and holding. We conclude that the exercise of personal jurisdiction over defendants comports with federal due process standards. Our independent research has revealed several other court decisions that have held the exercise of personal jurisdiction over defendants to be appropriate under similar facts, *i.e.*, where a defendant accepted a pathology

sample of a patient, subsequently sent a diagnostic report to the physician in the forum state, and knew that the report would be the basis of further treatment in the forum state. See, *e.g.*, *Sanders v. Ball*, No. Civ. A. 98—2715 (E.D. La. June 11, 1999); *Gonzales v. Chandel*, 13 F. Supp. 2d 1197 (D.C. Kan. 1998); *Urspruch v. Greenblum*, 968 F. Supp. 707 (S.D. Ga. 1996); *Pomerantz v. Wolfin*, 236 A.D.2d 379, 653 N.Y.S.2d 37 (1997); *Durette v. International Cancer Screening Laboratories, Inc.*, 3 Mass. L. Rptr. 604 (1995).

Pursuant to *Rollins*, we must now turn to the question of whether the exercise of personal jurisdiction over defendants comports with the Illinois due process guaranty. Specifically, we must determine whether it is "fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood*, 141 Ill. 2d at 275, 565 N.E.2d at 1316. Defendants' activities, through their national operation, have affected a significant interest in Illinois—the health of one of its citizens. Thus, we conclude that it is fair, just and reasonable to require defendants to defend a negligence action against them in Illinois. In the instant case, although mindful of the *Robbins* court concerns, for the same reasons that Illinois assertion of personal jurisdiction over defendants would not offend the federal due process guaranty, we believe that Illinois due process concerns are satisfied.

## CONCLUSION

In accordance with the foregoing, we affirm the decision of the circuit court of Cook County denying defendants' motion to quash service of summons and denying defendants' motion to dismiss this action for lack of personal jurisdiction. We remand this matter to the trial court for further proceedings consistent with this opinion.

O'BRIEN and NEVILLE, JJ., concur.